## JONES v. GRINNELL.

No. 3900.

United States Court of Appeals
Tenth Circuit.

Feb. 16, 1950.

Carleton Fox (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, A. F. Prescott, Virginia H. Adams, Special Assistants to the Attorney General, and Robert E. Shelton, United States Attorney, Oklahoma City, Okl., were with him on the brief), for appellant.

Luther Bohanon, Oklahoma City, Okl. (John E. Marshall and Lynn Adams, Oklahoma City, Okl., were with him on the brief) for appellee.

Before BRATTON, HUXMAN and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

The question is whether for purposes of liability for income tax the sale of certain property was that of a corporation or of individuals who were its stockholders.

Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a), defines gross income to include among other things gains, profits, and income derived from sales or dealings in property. Section 311, 26 U.S. C.A. § 311, provides in substance that a transferee of property of a taxpayer shall be liable for the tax imposed upon the taxpayer. Section 29.22(a)-18 of Treasury Regulation III, provides that if a corporation acquires property and later sells it for

an amount in excess of the cost or other basis, the gain on the sale is income. And section 29.22(a)-20, provides among other things that no gain or loss is realized by a corporation from the mere distribution of its assets in kind in partial or complete liquidation, however they may have appreciated or depreciated in value since their acquisition.

Peak Petroleum Corporation owned two mineral leases covering 320 acres of land. R. C. Grinnell was president of the corporation and its largest single stockholder. On September 20, 1944, a meeting of the stockholders was held at which a resolution was adopted which provided that the officers be authorized to proceed to dissolve the corporation; that Grinnell be appointed trustee to liquidate the assets; that the assets be transferred to Grinnell as trustee; that upon liquidation any sums obtained be deposited in a special bank account in the name of Grinnell as trustee; that one-third of the amount received from the sale of the assets be retained for the purpose of paying taxes and the necessary expenses of final closing and settling the affairs of the corporation; and that the balance of such funds be distributed ratably to the stockholders. On October 28, 1944, the leases were assigned to Grinnell; and on November 3, 1944, Grinnell assigned them to Skelly Oil Company. Skelly Oil Company paid Grinnell $35,000 in cash for the leases. The money was placed in a special bank account in the name of Grinnell, as trustee; and approximately two-thirds of it was disbursed ratably to the stockholders. Grinnell died, and Wilma Yount Grinnell was appointed executrix of his estate. The Commissioner of Internal Revenue determined that the sale of the leases to Skelly Oil Company should be treated as a sale by the Peak Corporation, and that the estate of Grinnell was liable as transferee for the resulting deficiency in tax. The executrix paid the tax with accrued interest and filed a claim for refund. No action having been taken on the claim within six months after the date of its filing, she instituted this action against the Collector of Internal Revenue to recover the amount paid. The court found that the Peak Corporation was effectively dissolved on September 20, 1944; that Grinnell as trustee for the stockholders sold the leases to Skelly Oil Company; and that the sale was not made by the Peak Corporation. Judgment was entered for plaintiff and defendant appealed.

It is a well settled principle that a taxpayer has the legal right to decrease the amount of what otherwise would be his taxes, or to avoid them altogether, by means which the law permits. Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 288, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135. And in some instances that may be the tax-wise result where a corporation makes a bona fide distribution of some or all of its assets as a complete or partial liquidating dividend to its stockholders and the stockholders later make a bona fide sale of the property to a third person. United States v. Cumberland Public Service Co., 70 S.Ct. 280. But the distribution as a liquidating dividend and the subsequent sale to the third person must be a bona fide reality in substance as distinguished from the stockholders merely constituting a conduit through which to channel title from the corporation to the ultimate purchaser. In such an instance, the corporation is not liable for the tax on the transaction. United States v. Cumberland Public Service Co., supra. But in determining the question of tax liability of the corporation, a transaction of that kind should be subjected to careful scrutiny. Wichita Terminal Elevator Co. v. Commissioner, 10 Cir., 162 F.2d 513.

In a case of this kind the true nature of the transaction viewed in its entirety is decisive in determining whether the sale of property is attributable to a corporation or to its stockholders or former stockholders. And the true nature of the transaction is not to be disguised by the mere formalism employed in effecting the transfer of the legal title. Tax liabilities are measured by the reality of the transaction, not the mere form employed in bringing it about. Commissioner of Internal

Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981.

■ The findings of fact made by the trial court that the Peak Corporation was effectively dissolved as of September 20, 1944, that the leases were transferred to Grinnell as trustee for the stockholders, that the transfer represented a liquidating dividend, that the trustee conveyed the leases to the Skelly Oil Company, and that the sale was not made by Peak Corporation are not to be disturbed on appeal unless they are clearly erroneous, due regard being had for the opportunity of the trial court to observe the witnesses while testifying, to appraise their credibility, and to determine the weight to be given to their testimony. Brown v. Prince, 10 Cir., 161 F.2d 537; Yates v. American Republics Corporation, 10 Cir., 163 F.2d 178; Wyoming Railway Co. v. Herrington, 10 Cir., 163 F.2d 1004; Boston Insurance Co. v. Read, 10 Cir., 166 F.2d 551, 2 A.L.R.2d 1155; Beard v. Achenbach Memorial Hospital Association, 10 Cir., 170 F.2d 859.

■ The decisive findings of fact made by the trial court must look for their support to the testimony of certain stockholders and others who attended the meeting of the stockholders held on September 20, 1944, that it was the intention and understanding that the corporation be then dissolved; to the resolution adopted at that meeting; to the assignments of the leases to Grinnell; to the assignments to the Skelly Oil Company; to the deposit of the proceeds of the sale in the special bank account; and to the partial distribution ratably to the stockholders. But the resolution of the stockholders did not recite or provide that the corporation be then presently dissolved. Instead, its plain language was that the officers be authorized to proceed to dissolve the corporation. Moreover, on October 4, 1944, approximately two weeks after the adoption of the resolution of the stockholders, an agreement in the form of a letter and its acceptance was entered into for the sale of the leases. The letter was addressed to the Peak Corporation and was signed by Skelly Oil Company. It recited that it was written in verification of a verbal agreement of the same day between R. D. Turner of the Skelly Oil Company and R. C. Grinnell and W. D. Egolf of the Peak Corporation in which the Skelly Oil Company agreed to purchase and "your company" agreed to sell the leases for an agreed consideration of $35,000. It contained conventional provisions for the submission of abstracts, copies of leases, assignments, and other title papers, and for the execution and delivery to the Skelly Oil Company of an assignment or assignments of the leases, division orders, and other papers necessary to accomplish "the transfer of all your rights to said properties. * * *" It further provided that the Peak Corporation should render the property for taxes for the year 1944 and furnish evidence that the taxes had been paid, and that the Skelly Oil Company should then reimburse the Peak Corporation for one-sixth of the taxes paid. And it stated in conclusion "If the above meets your understanding of our agreement, please sign in the space provided below as evidence thereof." The acceptance was signed by the Peak Corporation, by Grinnell as its president. On October 23, 1944, a meeting of the board of directors and the stockholders of the Peak Corporation was held. In wide difference from the minutes of the preceding meeting of the stockholders, the minutes of that meeting recited that Grinnell was then the owner of all the capital stock of the corporation. The record is silent in respect to the manner in which he acquired the shares of the other stockholders intermediate the two meetings, or the purpose of their acquisition. The minutes further provided that all of the assets of the corporation including the leases be turned over to Grinnell; that the officers be authorized to turn them over to him as soon as the secretary of the corporation could effect a proper transfer of them, subject to the outstanding indebtedness existing against the corporation; and that the officers be directed to proceed with the proper dissolution of the corporation. On October 28, five days after the meeting of the directors and stockholders, the Peak Corporation assigned the two leases to Grinnell. One of the assign-

ments was signed by Grinnell as president of the corporation and the other by him as its secretary-treasurer; and each contained a recitation that the assignor was the lawful owner of and had good title to the lease. In January, 1945, the Peak Corporation filed with the Collector of Internal Revenue an income and declared value excess-profits tax return for the year 1944. It was signed by Grinnell, as president, and C. T. Egolf, as secretary of the corporation; and it was verified by Frank H. Ephriam. Ephriam was the accountant for the corporation; he handled its tax matters for several years; and he was present at the meeting of the stockholders held on September 20, 1944. The return contained the statement "Depreciation Computed to 10-31-44, when property was turned over to Stockholder in cancellation of stocks." On the same day, Treasury Department Form 966, Return of Information under Section 148(d) of the Internal Revenue Code, was filed by the corporation. It was signed by Grinnell as president and attested by Egolf as secretary; and it gave October 23, 1944, as the date of the adoption of the resolution or plan of dissolution, or complete or partial liquidation. And finally, on November 20, 1946, a protest in the name of the corporation was filed with the Collector of Internal Revenue. It was prepared and signed by Ephriam. It purported on its face to be verified by Wilma Yount Grinnell, though she testified that she did not read it and did not verify it. It bore Ephriam's certificate of correctness, based upon belief. And it recited "(1) The officer of the seller, G. T. Egoff, approached Skelly Oil Company with an offer to sell; Skelly agreed to pay $35,000 for the property; the sale to be effective September 1, 1944. (2) No down payment was made by Skelly. (3) Proposed sale was then discussed with R. C. Grinnell, President of the corporation, and an important individual stockholder, tax counsel and other stockholders. It was decided not to sell unless the double-tax involved could be avoided." And it also recited "The Peak Petroleum Corporation was dissolved after the stockholders agreed to sell the property of the corporation. Dissolution was effected with the Internal

Revenue Act in mind, and was made to reduce the ultimate tax liability and to make it fall on the equitable owners of the corporation." This overwhelming array of evidence, much of it documentary, considered in its totality, is such as to impel a finding that the corporation was not effectively dissolved as of September 20, 1944; and that the leases were not in reality transferred to a trustee for the stockholders as a bona fide liquidating dividend. It points unerringly to the conclusion that the substance of the transaction for purposes of liability for income tax was a sale by the corporation to the ultimate purchaser. And that being the essence of the transaction, the estate of the transferee was liable for the tax. Commissioner of Internal Revenue v. Court Holding Co., supra.

The judgment is reversed and the cause remanded.