GAYNOR NEWS COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 45215.   Filed September 16, 1954.

*Harry Grossman, Esq.*, for the petitioner.
*William G. O'Neill, Esq.*, for the respondent.

1174

# 1176

FISHER, *Judge:* The relevant provisions of the statute here involved are as follows:

SEC. 112. RECOGNITION OF GAIN OR LOSS.

(f) INVOLUNTARY CONVERSION.—If property (as a result of * * * an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended * * * in the acquisition of control of a corporation owning such other property, * * * no gain shall be recognized, * * *. If any part of the money is not so expended, the gain, if any, shall be recognized to the extent of the money which is not so expended * * *

The question before us is limited to the single issue of whether or not the new property (owned by a corporation, all of the stock of which was acquired by taxpayer) is similar or related in service or use to the old property which had been converted. The statement accompanying respondent's statutory notice of deficiency assumes that the $80,000 award received from the City of Mt. Vernon was invested in the stock of said corporation.

Respondent's sole contention is that the old property was unimproved at the time it was acquired by the City of Mt. Vernon, but that the new property was improved property, and therefore was not similar or related in service or use to the old property. His reliance is upon that part of Regulations 111, section 29.112 (f)–1, which reads as follows:

There is no investment in property similar in character and devoted to a similar use if—

(1) The proceeds of unimproved real estate, taken upon condemnation proceedings, are invested in improved real estate.

It is our view that a realistic appraisal of the facts in the instant case results in the conclusion that the new property was similar and related in service or use to the old property, and that this view is not inconsistent with a practical construction of the provisions of the regulations on which respondent relies.

The uncontroverted facts are that petitioner acquired the old property in 1948 as one step in a program or project to erect a suitable structure for its own business purposes. There were improvements on the property, but they were of such character that they did not fit into petitioner's plans. Naturally, as long as the tenants remained (a period of less than one year), petitioner collected rents. An architect was promptly employed to prepare plans for the new structure, and the architect advised petitioner that existing structures should be removed to make way for construction work. Petitioner promptly gave

notice to the tenants to vacate, and when the tenants were out, the improvements were promptly removed and the property cleared—all according to plan. Construction work would undoubtedly have followed in due course had it not been for action on the part of the City of Mt. Vernon to take over the property.

Under the foregoing circumstances, we think it unrealistic to set up a functional classification in terms of improved or unimproved property. The old property, at the time it was taken over by the City of Mt. Vernon, was in one stage of the processing required to achieve a planned objective, namely, the preparation of the land to condition it for the erection of a plant or building to be used for the special business purposes of petitioner.

When the accomplishment of the objective was thwarted by the exercise of the power of eminent domain, petitioner took the normal steps to be expected under the circumstances. It bought another piece of property suitable to its purposes, reasonably similar in size and location. The goal in each instance was identical—the erection of a plant adapted to petitioner's business. There was no reason, either from petitioner's business viewpoint, or from any standpoint material to the underlying principles of section 112 (f), why petitioner should have been forced into the purchase of new property already bare of improvements. It bought the new property not for the sake of the existing improvements (which were more of an obstruction than a benefit), but with the immediate purpose of tearing down a substantial portion of them and proceeding to build according to its own preexisting business purposes.

The fact that petitioner was able to make some use of the skeleton of the existing structure was fortunate, but there is no corollary that its good fortune must carry with it the penalty of nonqualification under section 112 (f). We can conceive of no reason which would justify our holding that petitioner, to qualify for nonrecognition of gain, must have either sacrificed the opportunity to purchase suitable property or have required that existing improvements (which it could not have used in their then condition) be torn down or removed.

If attention is focused upon all of the essential facts in the case, we think it apparent that the new property, likewise in one stage of the planned course of petitioner's action, was clearly similar and related in service and use to the old property.

We may add that we have repeatedly held that section 112 (f) is a relief measure designed to prevent inequitable incidence of taxation, and therefore to be construed liberally to effectuate its purpose. *Massillon-Cleveland-Akron Sign Co.*, 15 T. C. 79, 83; *Washington Railway & Electric Co.*, 40 B. T. A. 1249; *Davis Regulator Co.*, 36 B. T. A. 437.

The regulation upon which respondent relies so heavily is a broad statement of policy intended as an aid in the construction and administration of section 112 (f). We do not think it is intended to apply to the factual situation before us. The ownership of land which is kept vacant, and held for future sale or for some indeterminate purpose such as future development, subdivision, or other use which is neither immediate nor proximate is hardly to be placed in the same classification as land which is vacant during a momentary transitional stage looking to prompt use for a definite planned objective. The involuntary conversion of land held vacant for an indefinite time and purpose, and the investment of the proceeds of the conversion thereof in improved land, presents an issue differing widely from the situation of an involuntary conversion of land in the process of being fitted for use for a particular purpose and the investment of the proceeds in property consisting of land and partially usable improvements designed to be used for the identical purpose.

Respondent cites in support of his position the case of *Lynchburg National Bank & Trust Co.*, 20 T. C. 670, affd. *Lynchburg National Bank & Trust Co.* v. *Commissioner*, (C. A. 4) 208 F. 2d 757. In that case, the petitioner, in 1940, purchased a tract of land adjacent to the bank, the land being then improved by a building which was rented to a retail shoestore and restaurant. The bank intended to demolish the improvements and erect on the land an addition to its main building in order to expand its available space for banking activities. There is nothing in the Findings of Fact in that case to indicate when the bank intended to carry out its plan, but the findings do include the statement that, due to war restrictions, demolition of the existing building and construction of the bank addition were postponed. In all events, the shoe company, which occupied the front half of the ground floor, continued in occupancy until eventual demolition of the building in 1949. The restaurant, which occupied the rear of the ground floor and the second and third floors, continued to do so until April 29, 1946, when the rear half of the building was destroyed by fire. In 1949, upon lifting of building restrictions, the part of the building which had not been destroyed by fire was demolished, and construction of the addition to the bank was completed in 1950. In June of 1946, the bank received insurance money covering its fire loss, and established a replacement fund with the permission of the Commissioner, later using the proceeds in the construction of the addition. The issue was whether the bank was entitled to nonrecognition of gain under section 112 (f).

In *Lynchburg National Bank & Trust Co.* v. *Commissioner, supra*, Judge Soper, speaking for the court in affirming the decision of the Tax Court, said (pp. 758, 759):

The Tax Court has held in a series of cases that the test, as to whether property acquired after a compulsory or involuntary conversion is similar or related in service or use to the property converted, is a functional one; and accordingly the test is not met by the substitution of a building used for banking purposes in place of a building used as a shoe store and a restaurant. To hold otherwise would be to say that the replacement of one commercial building by another commercial building is sufficient under the statute to avoid the recognition of gain, no matter how dissimilar or unrelated their respective purposes may be, and we do not think that the statute has that meaning.

We find nothing in Judge Soper's opinion which conflicts with the views here expressed. Our whole approach in the instant case has been on the basis of the test of function and purpose, which is inherent in the statutory language "similar or related in service or use." In the case before us, the function and purpose of the old property, from petitioner's perspective, was identical with that of the new. The mere fact that the old property was bare of improvements at the precise moment of conversion, while the new property had, when acquired, improvements fortuitously usable, in part, in furtherance of petitioner's clearly planned purposes (but to a substantial extent unusable, and actually an obstruction when viewed in the light of intended use) does not alter the basic identity of function, purpose, and use for which both the old and the new property were acquired by petitioner. Moreover, it is apparent from the record that prompt implementation of its objectives was intended by petitioner.

The only similarity between the *Lynchburg* case and the case before us is that the bank in the *Lynchburg* case intended to demolish the improvements and build an addition to the bank. As already pointed out, the findings in the *Lynchburg* case do not affirmatively show when this intention was to be carried out. We are left to some speculation as to whether the delay was due entirely or only partially to war conditions and building restrictions. We do know, however, that after the property was acquired, it was rented for about 6 years to both a shoe company and a restaurant and, from the time of the fire, was rented for another 2 to 3 years to the shoe company, before the demolition and reconstruction took place.

In all events, it is our view that the facts in the present case establish clear identity of intended function, use, and purpose of both the old and the new property and, therefore, that the statutory test of "similar or related in service or use" is here fully met.

We hold, under the circumstances, that petitioner is entitled to non-recognition of gain under the provisions of section 112 (f) of the 1939 Code.

Reviewed by the Court.

*Decision will be entered under Rule 50.*