DENNY L. COLLINS AND KATHRYN COLLINS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64285. Filed January 20, 1958.

*Joshua W. Miles, Esq.*, for the petitioners.
*Marion B. Morton, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined a deficiency in the income tax of petitioners for the taxable year 1953 in the amount of $1,881.60. Some adjustments were not contested by the petitioners and the only question presented is whether petitioners are entitled to

the nonrecognition of gain exemption provided for in section 112 (f), I. R. C. 1939, with respect to a transaction wherein petitioners sold property under threat of condemnation and used the proceeds to purchase other property.

### FINDINGS OF FACT.

Some of the facts were stipulated and they are found accordingly.

Petitioners are husband and wife and they reside at Chincoteague, Virginia. They filed a joint Federal income tax return for the taxable year 1953 with the district director of internal revenue at Richmond, Virginia. Denny L. Collins will hereinafter be called the petitioner.

During the year 1953 the State highway commissioner for the State of Virginia threatened to condemn certain property of the petitioners for extension of State Route 175. The property of the petitioners proposed for condemnation consisted of 2.68 acres of land on which was located petitioners' residence, a frame garage, 4 large-sized chickenhouses, 8 single-unit tourist cabins, and 1 duplex tourist cabin.

Under the threat of the condemnation, which threat was known by the petitioners approximately 30 days prior to June 10, 1953, petitioners reached an agreement with the State highway commissioner on June 10, 1953, whereby the State of Virginia acquired the land and chickenhouses with the equipment located therein, and the petitioners retained their residence, garage, and tourist cabins, all of which were removed prior to September 1, 1953, from the land taken and placed on adjacent property owned by the petitioners.

By virtue of the agreement with the State highway commissioner, the petitioners were paid $41,000, which was allocated by the State highway commissioner and the petitioners as follows:

| | |
|---|---:|
| 2.37 acres of land at $500 per acre | $1,185.00 |
| 0.31 acres of land at $125 per acre | 38.75 |
| Damage to residue caused by 6-ft. cut and leaving residue in two parcels | 1,000.00 |
| 84 chickenhouse stoves at $25 per stove | 2,100.00 |
| All feeders and watering troughs for chickenhouses | 582.25 |
| Loss of 4 chickenhouses (22,680 sq. ft.) | 17,594.00 |
| Moving and relocating 8 cabins, 1 duplex cabin, frame garage, and dwelling | 18,500.00 |
| Total | 41,000.00 |

Final settlement under the agreement was made on September 1, 1953, and petitioner deposited $41,000, represented by two checks in the amounts of $22,500 and $18,500, in his bank account on September 2, 1953.

At the time of the taking of part of their property, the petitioners were engaged in the business of raising poultry and renting tourist

cabins and trucks. After the property was taken, petitioners no longer engaged in the poultry-raising business.

On September 1, 1953, petitioner purchased a house and lot located in Chincoteague, Virginia, from Ralph Russell Clark and Oneita Clark, his wife, for $5,000.

On March 11, 1954, petitioner purchased a house and lot located in Chincoteague, Virginia, from Harold E. Peterson and Grace H. Peterson, his wife, for $4,000 and the cancellation of a $500 debt which the grantors owed the grantee.

During the period December 3, 1953, to June 1, 1954, petitioners expended $994.05 for furniture and appliances purchased for the houses acquired from the Clarks and the Petersons.

On April 24, 1954, petitioner and Wallace Bailey formed a partnership for the purpose of operating a gasoline service station, which was operated on land already owned by Collins. Each partner contributed $1,000 to the business for use as working capital. Collins contributed $300 in cash and $700 by a check dated April 30, 1954, drawn to the order of the partnership, Collins & Bailey. Kellam Distributing Company, Inc., of Belle Haven, Virginia, provided the partnership with a building and various equipment. On September 24, 1954, Bailey sold his interest in the partnership to the petitioner, who paid $2,150 for such interest. Upon this sale, petitioner acquired all of the assets belonging to the partnership and assumed sole responsibility for all of its liabilities.

In petitioners' income tax return for 1953 the sale of the land and chickenhouses was reported but no gain or loss was shown with respect to the transaction. Respondent determined petitioner received a long-term capital gain in the transaction and specifically determined petitioner was "not entitled to the benefits of section 112 (f) of the Internal Revenue Code of 1939, since the property purchased was not similar or related in service or use to the property converted."

The expenditures of money received by petitioner from the involuntary sale under threat of condemnation were not made in the acquisition of other property similar or related in service or use to the property converted.

### OPINION.

An involuntary transfer of property, such as a transfer in condemnation or threat thereof, is equivalent for tax purposes to a sale of the property and gain or loss on the sale is recognized, unless the transaction meets the terms and conditions of some statutory exemption. *Francis V. DuPont et al., Executors*, 31 B. T. A. 278; *M. J. Caldbeck Corporation*, 36 B. T. A. 452.

Section 112 (f), I. R. C. 1939, permits nonrecognition of the gain in an involuntary sale transaction if the money received from the sale of property under threat of condemnation is expended "in the acquisition of other property similar or related in service or use to the property so converted."

The property which was the subject of the involuntary sale had been used by petitioner in connection with his poultry business. He admits that he did not thereafter engage in the poultry business and that the proceeds realized from the sale were used to purchase two houses for rental purposes, the furniture and appliances for these houses, a partnership interest in a gasoline service station, and later, the other partner's interest in said business.

Section 112 (f), I. R. C. 1939, is a relief provision which recognized the inequity that sometimes results when a taxpayer's property is taken and he is compelled to take a profit when what he desires is to replace the property taken. *Francis V. DuPont et al., Executors, supra.* If the taxpayer replaces the converted property he can secure nonrecognition of the involuntary gain. But, as the statute states, the property acquired must be "similar or related in service or use to the property so converted." We have said the test as to whether the property acquired is similar or related in service or use to the property converted is a functional one. *Washington Market Co.,* 25 B. T. A. 576; *Paul Haberland,* 25 B. T. A. 1370; *Davis Regulator Co.,* 36 B. T. A. 437; *Lynchburg National Bank & Trust Co.* v. *Commissioner,* 208 F. 2d 757, affirming 20 T. C. 670; *Steuart Bros., Inc.,* 29 T. C. 372.

Petitioner does not argue that the rental houses, furniture and equipment, and gasoline filling station business that he acquired with the proceeds of the sale constitute the acquisition of other property "related in service or use" to the poultry business property that was involuntarily conveyed. His whole argument is an appeal to equity, that his property was taken in an involuntary sale and he was "forced" to quit the poultry business and "forced" to replace this business with other investments. Petitioner is seeking exemption from tax under a tax exemption statute. He must show that he comes "clearly within the terms of the statute allowing the exemption." *Davis Regulator Co., supra.* Without agreeing that the equity of the case would favor petitioner, we need only say that this Court is without authority to decide a case merely because equity would seem to favor one party. *N. Gordon Phillips,* 29 T. C. 47, and *Emilie Furnish Funk,* 29 T. C. 279.

*Decision will be entered for the respondent.*