JOHN RICHARD CORP., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1198–64. Filed April 19, 1966.

*John M. Doukas*, and *John M. Barnes, Jr.*, for the petitioner.
*Lawrence A. Wright*, for the respondent.

BRUCE, *Judge:* Respondent determined a deficiency in the income tax of petitioner for the year 1958 in the amount of $18,017.14. The sole issue is whether petitioner's purchase of stock in a corporation organized for the purpose of acquiring and operating a mill similar to its wool-processing plant which was destroyed by fire results in nonrecognition of gain realized by petitioner from the proceeds of fire insurance carried on its destroyed property.

42

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioner is a corporation, organized under the laws of Massachusetts on January 14, 1952, with its principal office in New Bedford, Mass. W. T. Ransburg and B. H. Erskine each own 50 percent of petitioner's stock. Petitioner's Federal income tax return for the calendar year 1958 was filed with the district director of internal revenue in Boston, Mass. At all times herein material, petitioner kept its books and records and filed its Federal income tax returns on the accrual basis.

Petitioner owned and operated a wool-processing plant in Freetown, Mass., which was struck by lightning and destroyed by fire on July 30, 1957. After the destruction of the plant, petitioner received $124,000 as the proceeds from fire insurance carried on the plant, $24,000 for the building and $100,000 for the contents. The insurance proceeds received were $95,882.96 in excess of the adjusted basis of the property. Petitioner allocated $1,185.60 of the proceeds to its supplies inventory, $98,814.40 to machinery and equipment, and $24,000 to the building.

Petitioner's directors subsequently decided to purchase a mill in Peterborough, N.H., in order to continue the wool-processing operations formerly conducted at the destroyed plant. In arriving at this decision, several factors were considered, including the mill's proximity to petitioner's principal customer, the local tax situation, transportation costs, and labor supply.

For business reasons, including the desire to disassociate itself from labor problems existing at the old location, petitioner decided to create a new corporation for the purpose of purchasing and operating the new mill.

On August 25, 1958, petitioner caused Peterborough Mills, Inc. (hereinafter referred to as Peterborough Mills), to be organized in New Hampshire with authorized and issued common stock of 1,000 shares with a par value of $100. Ransburg and Erskine each subscribed to five shares for $500 in cash. Petitioner purchased the remaining 990 shares for $99,000 in cash, in accordance with motions voted at a joint meeting of stockholders and directors and a meeting of the board of directors held in New Bedford at 2 p.m. on August 26 and August 29, 1958, respectively. The motions provided that petitioner purchase 990 shares of the common stock of Peterborough Mills and authorized the treasurer to issue a check to Peterborough Mills in the amount of $99,000 in full payment for the stock. At the joint meeting of stockholders and directors, petitioner's president was directed to guarantee a real estate mortgage note of Peterborough Mills

in the amount of $40,500, issued to Gera Corp. The officers and directors of petitioner and Peterborough Mills since 1958 are substantially the same.

On August 30, 1958, Peterborough Mills acquired the mill in New Hampshire and the wool-processing business conducted by petitioner prior to the fire was resumed by Peterborough Mills. The latter corporation's organization, the purchase of the mill, and the relocation of the business would not have been undertaken unless wool-processing operations could have been conducted immediately. Petitioner received tax advice from legal counsel while planning the resumption of its wool-processing business.

On its first Federal income tax return, Peterborough Mills showed the following fixed assets and depreciation reserves as of August 31, 1959:

| Item | Basis | Depreciation reserve |
|---|---|---|
| Land | $15,667.15 | |
| Buildings | 77,443.21 | $2,095.30 |
| Machinery and equipment | 110,739.88 | 11,880.67 |
| Furniture and office equipment | 669.91 | 66.99 |
| Motor vehicles | 415.28 | 57.65 |
| Totals | 204,935.43 | 14,100.61 |

On its Federal income tax return for 1958 petitioner reported no part of the $95,882.96 gain realized upon receipt of the proceeds of fire insurance on its Freetown plant. Subsequently, petitioner agreed that $23,814.40 of this gain should be taken into account in computing taxable income and pursuant to a consent (Form 870) executed by petitioner, respondent assessed the increase in income tax attributable to this amount. In his statutory notice of deficiency mailed on December 26, 1963, respondent determined that the remainder of the gain, in the amount of $72,068.56, is includable in petitioner's taxable income for 1958.

The mill acquired by Peterborough Mills was similar and related in service and use to petitioner's Freetown plant.

Petitioner's purchase of Peterborough Mills stock was made for the purpose of replacing its Freetown mill.

OPINION

The only issue is whether petitioner's purchase of stock in Peterborough Mills resulted in nonrecognition of gain realized by petitioner from fire insurance proceeds upon its Freetown plant under section 1033 of the Internal Revenue Code of 1954.[1]

---

[1] Except as otherwise indicated, all section references hereinafter will refer to the Internal Revenue Code of 1954.

Section 1033 [2] is a relief provision enacted to allow a taxpayer to replace property involuntarily converted without paying the capital gains tax incident to other exchanges of property. In the case of property involuntarily converted into money after December 31, 1950, if the taxpayer, within a specified period, for the purpose of replacing the converted property, purchases property similar or related in service or use to the converted property, or purchases stock in the acquisition of control of a corporation owning such property, gain is recognized, at the taxpayer's election, only to the extent that the money received exceeds the cost of the property or stock. As a relief provision, this section is to be construed liberally to achieve its purpose. *Harvey J. Johnson*, 43 T.C. 736; *Filippini* v. *United States*, 318 F. 2d 841 (C.A. 9, 1963); *Gaynor News Co.*, 22 T.C. 1172.

We have found as a fact, and respondent does not otherwise contend, that the mill purchased by Peterborough Mills on August 30, 1958, was similar and related in service and use to petitioner's Freetown mill. Respondent contends that section 1033 is inapplicable because petitioner's purchase of Peterborough Mills stock was not for the purpose of replacing its converted property and because Peterborough Mills did not own the replacement property at the time petitioner acquired a controlling stock interest. Petitioner contends that the provisions of the statute relating to the acquisition of stock are satisfied if the acquired corporation obtains ownership of similar property within the statutory replacement period. Petitioner alternatively contends that the statute has been satisfied in this case, regardless of whether the provisions relating to the purchase of stock have been met, because the

---

[2] SEC. 1033. INVOLUNTARY CONVERSIONS.

(a) GENERAL RULE.—If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—

\* \* \* \* \* \* \*

(3) CONVERSION INTO MONEY WHERE DISPOSITION OCCURRED AFTER 1950.—Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph (2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph :

(A) NONRECOGNITION OF GAIN.—If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. \* \* \*

\* \* \* \* \* \* \*

(B) PERIOD WITHIN WHICH PROPERTY MUST BE REPLACED.—The period referred to in subparagraph (A) shall be the period beginning with the date of the disposition of the converted property, or the earliest date of the threat or imminence of requisition or condemnation of the converted property, whichever is the earlier, and ending—

(i) one year after the close of the first taxable year in which any part of the gain upon the conversion is realized, or

purchase of similar property by Peterborough Mills was in substance a purchase by petitioner. We need not consider petitioner's alternative argument, since we hold that its purchase of Peterborough Mills stock was the purchase of stock "in the acquisition of control of a corporation owning" similar property, within the meaning of the statute.

Petitioner's Freetown plant in which it conducted its wool-processing operations was razed by fire on July 30, 1957. In seeking to replace this property, petitioner's directors found, and decided to buy, a mill in Peterborough, N.H. For business reasons, including the desire to disassociate itself from labor problems existing at the old location, petitioner caused a new corporation, Peterborough Mills, to be formed under the laws of New Hampshire for the purpose of purchasing and operating the new mill. The new corporation was formed on August 25, 1958; petitioner purchased 99 percent of its stock sometime after 2 p.m., August 29; and the Peterborough Mills purchased the mill on August 30. The mill was equipped with machinery ideally suited to petitioner's purpose and its wool-processing operations began immediately.

The formation of Peterborough Mills was an integral part of petitioner's efforts to replace its property. The parties stipulated that petitioner had decided to buy the mill prior to the creation of the new corporation, and the short time between its incorporation and acquisition of the new mill suggests that petitioner negotiated the purchase. Ransburg, a 50-percent stockholder in petitioner and one of its directors, testified that petitioner would not have entered into the transaction unless its wool-processing operations could be continued by the new mill. In light of these facts, we hold that petitioner's purchase of Peterborough Mills stock was made for the purpose of replacing its converted property. We find nothing in the statute or its legislative history which justifies a conclusion that the stock purchase must have been necessary to the property's replacement in order to have been made for that purpose, as argued by respondent. The stock purchase was made for the primary purpose of replacing the property, and the fact that, for business reasons, petitioner chose to acquire the replacement property through a newly formed corporation rather than by direct purchase does not militate against such purpose.

The question remains whether the fact that the purchase of the mill by the new corporation took place after petitioner's purchase of the stock is sufficient to deprive petitioner of the nonrecognition-of-gain benefits of section 1033(a)(3)(A) as contended by respondent. We do not think it does.

The organization of the new corporation, the purchase of 99 percent of its stock by petitioner, and the purchase of the mill by the new corporation were clearly integral parts of a single plan having for its pur-

pose the acquisition of "property similar or related in service or use to the property" of petitioner which had been destroyed by fire. The sequence of events strongly suggests that the actual purchase of the stock and the purchase of the mill took place at or about the same time on August 30, 1958.

In *Clifton Investment Co.*, 36 T.C. 569, affd. 312 F. 2d 719 (C.A. 6, 1963), certiorari denied 373 U.S. 921, the taxpayer invested the proceeds received by it upon the condemnation of an office building in Cincinnati, Ohio, in the purchase of shares of stock in another Ohio corporation which later acquired a hotel building in New York City. This Court held that the taxpayer was not entitled to the nonrecognition-of-gain provisions of section 1033 for the reason that the hotel property was not "similar or related in service or use" to the office building which had been condemned. In considering the language of the statute, however, and before arriving at its final conclusion, the Court stated at pages 573, 574:

> The fact that the net proceeds of the sale of the United Bank Building were invested in the stock of another corporation instead of being used directly in the purchase of a building makes no difference under the applicable statute, if the new corporation acquired a building which was "similar or related in service or use to the property so converted." * * *
>
>    *      *      *      *      *      *      *
>
> Here, the petitioner owned an office building in Cincinnati and when it was sold as the result of condemnation proceedings it invested the proceeds in a hotel building in the city of New York. As we have already stated, the fact that the two buildings were located in different cities makes no difference nor does it make any difference that the petitioner invested the money in another corporation, acquiring the building in question, if the building so acquired is "similar or related in service or use to the property so converted." * * *

Cf. *Washington Market Co.*, 25 B.T.A. 576; *Paul Haberland*, 25 B.T.A. 1370.

Respondent contends that the above statements of the Court in the *Clifton Investment Co.* case were dicta and are not controlling here for the reason that the issue here presented was not argued by him in that case and the Court's final determination was based on the ground that the two properties in question were not "similar or related in service or use." We do not regard the Court's statements in the *Clifton Investment Co.* case as mere dicta even though the Court based its final decision on the ground stated. The Court had the entire language of the statute to consider and not merely a single word or phrase. It was both proper and appropriate for the Court to consider first whether the acquisition of the replacement property by the hotel corporation after the petitioner had purchased the stock of such corporation would deprive the petitioner of the nonrecognition-of-gain provisions of the statute. Had the Court arrived at a different conclusion, that might well have ended the case and it would not have been necessary to con-

sider the much more difficult and controversial question whether the property acquired was "similar or related in service or use" to the property condemned.

On the facts presented in the instant case we likewise think it immaterial that the mill which was acquired to replace petitioner's mill which had been destroyed by fire, was purchased by a corporation, organized for the purpose of acquiring such mill, after petitioner purchased the stock of such corporation. The organization of the new corporation, the acquisition of its stock by petitioner, and the purchase of the mill were merely steps in an integrated transaction having for its purpose the replacement of petitioner's involuntarily converted property. The entire transaction, including the location of and negotiations for the new mill occurred within a period of 1 month. The acquisition of the stock and the purchase of the mill occurred within a few hours, if not actually at the same time and place. Petitioner's purchase of the stock and the acquisition of the mill by Peterborough Mills were separated in point of time only so far as was required by business practicalities. Any distinction in the application of the statute under these circumstances and in the case of a purchase of stock in a corporation which previously owned the property is too technical to be justified and would fail to give effect to the statutory purpose to allow tax-free replacement of involuntarily converted property through the purchase of other property or stock.

There being no question here that the newly acquired property was "similar or related in service or use to the property so converted," we hold that petitioner is entitled to the nonrecognition-of-gain provisions of section 1033(a)(3)(A).

We find no merit in respondent's argument that we should hold otherwise because the basis of the new mill and equipment to Peterborough Mills would be somewhat lower if petitioner had purchased the mill and transferred it to Peterborough Mills. Peterborough Mills is not a party to this proceeding and no question of its basis is involved. Moreover so long as it comes within the statute, petitioner had the legal right to so conduct its business transactions as to minimize the incidence of taxation. *United States* v. *Cumberland Pub. Serv. Co.*, 338 U.S. 451; *Arthur J. Kobacker*, 37 T.C. 882.

*Decision will be entered for the petitioner.*