ESTELA DE LA GARZA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3610–64.  Filed June 24, 1966.

*Stanley Schoenbaum,* for the petitioner.
*Ralph V. Bradbury, Jr.,* for the respondent.

#### OPINION

DAWSON, *Judge:* Respondent determined a deficiency in income tax against the petitioner for the year 1962 in the amount of $120. The only issue for decision is whether the petitioner is entitled to claim her sister, Pauline, as a dependent under the provisions of sections 151 and 152, I.R.C. 1954, for the year 1962.

This case is fully stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Estela De La Garza (hereafter called petitioner) resides at 3819 Eldridge, San Antonio, Tex. Petitioner, using her maiden name of Estela Alvarez, filed her individual Federal income tax return for the year 1962 with the district director of internal revenue at Austin, Tex.

During the year 1962 petitioner was not married and lived with eight other persons at 1020 S. Hamilton Street, San Antonio, Tex. These persons were her parents, Elpidio and Frances Alvarez; four

sisters, Pauline, Guadalupe, Mary, and Sofia; and two brothers, Jesse and Richard. Petitioner's sister Pauline, who was age 22 in 1962, was claimed as a dependent by petitioner in her 1962 income tax return. Pauline's gross income from earnings for that year was $439.11.

Net earnings of members of the Alvarez family for 1962 were as follows:

| | |
|---|---|
| Elpidio Alvarez | $1,394.77 |
| Estela Alvarez (petitioner) | 1,942.12 |
| Pauline Alvarez | 409.71 |
| Guadalupe Alvarez | 1,882.61 |

The family residence at 1020 S. Hamilton Street was owned by Elpidio and Frances Alvarez and had a fair rental value for the year 1962 of $480. There was no other income received by any member of the Alvarez family for that year.

All of the earnings of the Alvarez family, including Pauline's, were given to Frances Alvarez, the mother. She used these pooled sums to pay all the expenses of all members of the household. No portion of such sums was set aside or held for the benefit of the particular members furnishing such sums. Including the fair rental value of the house, the cost of supporting each member of the household was equal and amounted to $678.80 per member.

Petitioner was the only person who claimed Pauline as a dependent in 1962. Multiple-support declarations (Form 2120) with respect to Pauline were signed by Guadalupe Alvarez and Elpidio Alvarez.

In his notice of deficiency the respondent disallowed the exemption credit claimed by petitioner for Pauline because he treated the $409.71 contributed by Pauline to the common family fund in 1962 as having been supplied entirely for her own support. Consequently, since such amount exceeded 50 percent of Pauline's total support of $678.80, the Commissioner determined that Pauline could not be claimed as a dependent by the petitioner.

This case is presented to us as involving a question of first impression, although both parties focus our attention on Rev. Rul. 64–222, 1964–2 C.B. 47.[4] Respondent takes the position that the ruling

---

[4] In pertinent part Rev. Rul. 64–222 states that: "Where several members of a household contribute toward expenses which are equally applicable to the support of each member of the household, the contributing members will be presumed, in the absence of evidence of actual support, to have pooled their contributions to the support of the household, and each member thereof shall be considered to have received an equal part of the pooled contributions as a part of his support. * * * members receiving more than they contribute will be considered to have received support from members receiving less than they contribute, to the extent the amount considered to have been received exceeds the amount contributed."

is valid, reasonable, and consistent with the statute [2] and regulations.[3] Petitioner, on the other hand, challenges the correctness of the ruling, as being contrary to the statute and regulations, to the extent that it requires that the amount contributed to the common family fund by the claimed dependent must not exceed 50 percent of the amount received from the fund.   Or, stated differently, it is the petitioner's contention that the ruling erroneously requires the entire amount contributed to the pool by the claimed dependent to be considered as supplied for her own support.   This argument is predicated on the theory that the amount contributed to the pool by Pauline should be treated as applying equally to the support of all nine members of the household who shared in the pooled funds.   Under this theory Pauline would be considered as having contributed only $45.52 (one-ninth of $409.71) for her own support in 1962.   Thus the petitioner argues that since all family earnings were pooled and the individual cost of support was determined by dividing this figure by the number of household members, the same treatment should be given to earnings contributed by each individual.

We agree with the respondent.   In order to meet the requirements of section 152(c)[4] it is necessary for the petitioner to establish, as part

---

[2] SEC. 151.   ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS.

(a) ALLOWANCE OF DEDUCTIONS.—In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income.

\*      \*      \*      \*      \*      \*      \*

(e) ADDITIONAL EXEMPTION FOR DEPENDENTS.—

(1) IN GENERAL.—An exemption of $600 for each dependent (as defined in section 152)—

(A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $600, or

SEC. 152.   DEPENDENT DEFINED.

(a) GENERAL DEFINITION.—For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) as received from the taxpayer):

\*      \*      \*      \*      \*      \*      \*

(3) A brother, sister, stepbrother, or stepsister of the taxpayer,

[3] Sec. 1.152–1(a)(2)(i), Income Tax Regs., provides:
For purposes of determining whether or not an individual received, for a given calendar year, over half of his support from the taxpayer, there shall be taken into account the amount of support received from the taxpayer as compared to the entire amount of support which the individual received from all sources, including support which the individual himself supplied.   The term "support" includes food, shelter, clothing, medical and dental care, education, and the like.   Generally, the amount of an item of support will be the amount of expense incurred by the one furnishing such item.   If the item of support furnished an individual is in the form of property or lodging, it will be necessary to measure the amount of such item of support in terms of its fair market value.

[4] SEC. 152(c).   MULTIPLE SUPPORT AGREEMENTS.—For purposes of subsection (a), over half of the support of an individual for a calendar year shall be treated as received from the taxpayer if—

(1). no one person contributed over half of such support;

(2) over half of such support was received from persons each of whom, but for the fact that he did not contribute over half of such support, would have been entitled to claim such individual as a dependent for a taxable year beginning in such calendar year;

(3) the taxpayer contributed over 10 percent of such support; and

of her proof, that no other person (including Pauline) contributed more than one-half of Pauline's total support for 1962. We think the petitioner has failed to establish this essential element of the claimed dependency exemption.

There are several reasons for rejecting petitioner's arguments. First, the language of section 1.152–1(a)(2)(i), Income Tax Regs., is plain. It provides that, in determining whether an individual received over half of his support from the taxpayer, "there shall be taken into account * * * the entire amount of support which the individual received from all sources, *including support which the individual himself supplied.*" We construe this to mean that any amount contributed to a common family fund by a particular member of the household is deemed to have been supplied in full for his support when such amount is less than his aliquot share of the entire fund. It seems to us that this provision of the regulation is a reasonable interpretation of the statute and is consistent with the purpose and intent of Congress. As such, it carries with it the force and effect of law. *Maryland Casualty Co.* v. *United States*, 251 U.S. 342 (1920). Simply because the total cost of support for all family members is prorated does not justify a proration of a contributing member's earnings. Such an interpretation would produce an illogical and unrealistic result since it would then be possible for a member to contribute more to a common family fund than would be spent for his support and still be treated as not supporting himself. For example, under petitioner's theory, Pauline could have contributed as much as $3,054 out of the total of $6,109.21 and could still be claimed as a dependent by other family members under section 152(c).

Since the parties have stipulated that the cost of supporting each member of the Alvarez household was $678.80 and that Pauline had net earnings of $409.71 which were contributed to the common family support fund, it is clear that Pauline supplied over half of her own support and, consequently, is the only person entitled to take the dependency exemption for herself. On these facts the petitioner, her father, and her sister, Guadalupe, have not complied with the provisions of section 152(c) pertaining to multiple-support agreements.

The petitioner, through her able counsel, maintains that the Commissioner's position clashes with the liberal statutory pattern of allowing dependency exemptions and, if sustained, will produce an inequitable result "so harsh as to be unjustifiable." This is in essence a plea for equitable relief. But we have no equity powers and cannot grant

(4) each person described in paragraph (2) (other than the taxpayer) who contributed over 10 percent of such support files a written declaration (in such manner and form as the Secretary or his delegate may by regulations prescribe) that he will not claim such individual as a dependent for any taxable year beginning in such calendar year.

**450**

relief on such grounds even though inclined to do so. *Lorain Avenue Clinic*, 31 T.C. 141, 164 (1958); and *Denny L. Collins*, 29 T.C. 670, 673 (1958). Accordingly,

*Decision will be entered for the respondent.*