\* FRANK G. TEMPLETON AND HELEN M. TEMPLETON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 216-74.    Filed June 21, 1976.

*J. Randall Groves, Richard E. Thigpen, Jr., W. Pinkney Herbert, Jr., and J. Michael Booe,* for the petitioners.
*Eric B. Jorgensen,* for the respondent.

### OPINION

SIMPSON, *Judge:* The Commissioner determined the following deficiencies in the petitioners' Federal income tax:

| Year | Deficiency |
| --- | --- |
| 1969 | $76,399.36 |
| 1970 | 4,531.79 |
| 1971 | 2,348.27 |

The issue to be decided is whether, under section 1033 of the Internal Revenue Code of 1954,[1] the petitioners are entitled to defer the recognition of gain realized from the condemnation of property owned by Frank G. Templeton.

All of the facts have been stipulated, and those facts are so found.

The petition herein was timely filed by Frank G. Templeton and Helen M. Templeton, his wife, who maintained their legal

---

\* The facts set forth herein are modified in a Supplemental Opinion. See 67 T.C. —— (Dec. 21, 1976).

[1] All statutory references are to the Internal Revenue Code of 1954 as in effect during the years at issue.

residence in Charlotte, N.C., at the time of filing such petition. They filed their joint Federal income tax returns for the years 1969, 1970, and 1971, using the cash method of accounting, with the Internal Revenue Service Center, Chamblee, Ga. Mr. Templeton will sometimes be referred to as the petitioner.

In 1947, the petitioner and his then wife, Evelyn, now deceased, purchased 129 acres of unimproved land from G. S. and Hattie White at a cost of $36,000 (White tract). In 1954, the petitioner and Evelyn purchased 20 acres of unimproved land, adjacent to the White tract, from Thaddeus Thomas and his wife at a cost of $19,000 (Thomas tract). Prior to 1969, a building known as the Leesona Building, a gas station, and a motel were constructed on 7.41 acres of the Thomas tract;[2] the additional 12.59 acres remained undeveloped. In 1963, Evelyn died, and the petitioner inherited her interests in the White and Thomas tracts. Soon after his wife's death, the petitioner gave his son and daughter each a one-third interest in the Thomas tract.

At some time prior to March 1969, the petitioner learned that some of his property would be condemned, and he consulted an attorney concerning the tax treatment of the proceeds of condemnation. His attorney gave him advice as to how to qualify for the tax benefits of section 1033, and he strictly followed such advice.

In accordance with the attorney's advice, the petitioner caused T.P.T., Inc. (TPT), to be formed in March 1969 under the laws of North Carolina. One of its stated purposes was to engage in the real estate business. At the first meeting of the board of directors on April 4, 1969, the petitioner exchanged $100 cash for 1 share of the voting common stock of TPT having a stated par value of $100. TPT has only one class of capital stock.

On April 10, 1969, the petitioner and his son and daughter conveyed their interests in the 12.59 acres of unimproved land in the Thomas tract to TPT for 1,886 shares of its common stock in a transaction governed by section 351. After the transfer, the petitioner owned 631 shares of TPT, while his son and daughter each owned 628 shares. However, the son and daughter agreed to put their stock in a voting trust under the terms of which the petitioner was granted the right to vote their stock.

---

[2] Although the parties stipulated that this tract was 7.14 acres, the stipulation appears to be in error.

On October 20, 1969, the North Carolina State Highway Commission condemned approximately 62.5 acres of the White tract and deposited $321,400 with the Clerk of the Mecklenburg County Superior Court. On October 21, 1969, the deposit was released to the petitioner pursuant to North Carolina law. His basis in the condemned property was $17,441.88, and thus, he realized a gain of $303,958.12 on the condemnation.

At a special meeting of TPT's board of directors on December 11, 1969, the petitioner transferred 38.936[3] acres of unimproved land plus $300,000 cash to TPT in exchange for 4,947 shares of its common stock in a transaction governed by section 351. The cash was identified as part of the proceeds the petitioner received from the condemnation. After this transfer, the petitioner owned 5,578 of TPT's 6,834 shares of common stock.

On February 10, 1970, the petitioner transferred $21,400 in cash to TPT in exchange for 214 of its shares. The cash was identified as part of the proceeds from the condemnation of part of the White tract. The petitioner concedes that this transfer does not satisfy the requirements of section 1033.

The petitioner purchased two lots with a rental frame house thereon in February 1970 from his son and daughter for $20,000 plus the assumption of a mortgage on the property. He then sold the property to TPT for $5,000 plus the assumption of the mortgage. On or about March 31, 1970, the petitioner, his son, and his daughter sold their interest in the Leesona Building to TPT for $118,709 plus the assumption of the outstanding mortgage.

The petitioners did not report the gain from the condemnation of a portion of the White tract on their 1969 Federal income tax return. They argue that they need not recognize such gain pursuant to section 1033. The Commissioner determined that they were not entitled to the benefits of such section, since he alleges that the petitioner's reinvestment of the condemnation proceeds was without economic substance and that the petitioners did not purchase replacement property within the meaning of section 1033(a)(3)(A)(ii). Thus, he determined that the gain from the condemnation of the petitioner's land must be recognized in 1969.

---

[3] Although the parties stipulated this tract to be 38.396 acres, the stipulation appears to be in error.

Section 1033 provides generally for the recognition of gain when property is involuntarily converted into money, but it allows a taxpayer to elect not to have such gain recognized if he purchases certain replacement property within the specified period. In order to meet the requirements for nonrecognition, the taxpayer must reinvest the proceeds of the involuntary conversion in accordance with section 1033(a)(3)(A), which provides in part:

(A) NONRECOGNITION OF GAIN.—If the taxpayer during the period specified in subparagraph (B), *for the purpose of replacing the property so converted,* purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion * * * exceeds the cost of such other property or such stock. * * * For purposes of this paragraph—
* * *
(ii) the taxpayer shall be considered to have purchased property or stock only if, but for the provisions of subsection (c) of this section, the unadjusted basis of such property or stock would be its cost within the meaning of section 1012.
[Emphasis supplied.]

Section 1033 is a relief provision enacted to allow a taxpayer to replace property involuntarily converted without recognizing any gain resulting from the conversion. See *John Richard Corp.,* 46 T.C. 41, 44 (1966). It has frequently been said that such a provision should be liberally construed to achieve its purposes. See, e.g., *Estate of John E. Morris,* 55 T.C. 636 (1971), affd. per curiam 454 F.2d 208 (4th Cir. 1972); *William B. Cusack,* 48 T.C. 156, 163 (1967); *John Richard Corp., supra; Gaynor News Co.,* 22 T.C. 1172, 1177 (1954). "A liberal construction of a relief provision to effectuate the intent of Congress does not mean, however, that a loose construction (which would permit abuse) is justified." *Nehi Beverage Co.,* 16 T.C. 1114, 1119 (1951); see *Denny L. Collins,* 29 T.C. 670, 673 (1958); *Davis Regulator Co.,* 36 B.T.A. 437, 442 (1937).

The purpose of the statute is to relieve the taxpayer from an unexpected tax burden when his property has been involuntarily converted, to the extent he uses the proceeds to purchase property to replace the converted property. See *Filippini v. United States,* 318 F.2d 841, 844 (9th Cir. 1963), cert. denied 375 U.S. 922 (1963); *Winter Realty & Const. Co. v. Commissioner,* 149 F.2d

567, 569 (2d Cir. 1945), affg. on this issue 2 T.C. 38 (1943), cert. denied 326 U.S. 754 (1945); *Gaynor News Co., supra* at 1177; *Massillon-Cleveland-Akron Sign Co.,* 15 T.C. 79, 82 (1950); *Washington Market Co.,* 25 B.T.A. 576, 584 (1932). However, "it was not intended to confer a gratuitous benefit upon the taxpayer by permitting him to utilize the involuntary interruption in the continuity of his investment to alter the nature of that investment tax free." *Filippini v. United States, supra* at 844.

The petitioner argues that he comes within the literal terms of the statute since he purchased stock in the acquisition of control of TPT, a corporation owning property similar or related in service or use to the land in the White tract which was condemned. However, his argument ignores the plain meaning of the statute as well as the congressional purpose in providing this relief measure.

The petitioner has the burden of proving that he qualifies for the nonrecognition treatment provided by section 1033. Rule 142(a), Tax Court Rules of Practice and Procedure; *Denny L. Collins, supra; Davis Regulator Co., supra.* To carry such burden, he must establish that he transferred the proceeds received from the condemnation to TPT "for the purpose of replacing the property so converted." See *Adolph K. Feinberg,* 45 T.C. 635, 641-642 (1966), affd. 377 F.2d 21 (8th Cir. 1967). The record establishes that the petitioner sought the advice of counsel with respect to the tax treatment of the proceeds of the condemnation and that his conduct was designed to qualify for the nonrecognition treatment of section 1033. Obviously, he is entitled to arrange his affairs so as to pay a minimum amount of tax. *Gyro Engineering Corp. v. United States,* 417 F.2d 437, 440 (9th Cir. 1969); *Murphy Logging Co. v. United States,* 378 F.2d 222, 223 (9th Cir. 1967); *Helvering v. Gregory,* 69 F.2d 809, 810 (2d Cir. 1934), affd. 293 U.S. 465 (1935). However, under these circumstances, we must examine carefully the transactions that occurred to ascertain whether, in substance, there has been a compliance with the statutory requirements or whether they are merely designed to create the appearance of conforming to such requirements. See *Gyro Engineering Corp. v. United States, supra;* cf. *Commissioner v. Tower,* 327 U.S. 280 (1946); *Gregory v. Helvering,* 293 U.S. 465 (1935); *Jones v. Grinnell,* 179 F.2d

873 (10th Cir. 1950). In judging these transactions, we must look at all of the events or steps—not merely some isolated events— that occurred in connection with the transfer of the funds to TPT and determine the substance of such transactions in order to decide whether the petitioner entered into them for the purpose of replacing his condemned property. Cf. *Commissioner v. Court Holding Co.,* 324 U.S. 331 (1945); *Higgins v. Smith,* 308 U.S. 473 (1940); *Weiss v. Stearn,* 265 U.S. 242 (1924).

Before the formation of TPT, the petitioner and his children owned the Thomas tract; the 12.59 acres of that tract later acquired by TPT were thus acquired from the petitioner and his family. Furthermore, shortly after the corporation acquired the $300,000 from the petitioner, more than $123,000 of such funds were used to purchase property from him and his family. If we look at the situation existing 6 months after the petitioner transferred the funds to TPT, we find that the corporation no longer holds a substantial portion of such funds but that such funds have been returned to the petitioner and other members of his family. The net effect of these transactions is that the petitioner and his family have arranged to dispose of some of their other real estate holdings, and they have in hand a substantial portion of the money received from the condemnation. When all these facts are considered, we are not convinced that, at the time the petitioner transferred the proceeds to TPT, he did so with the purpose of acquiring other property similar to that condemned. Cf. *American Truck Rental Corp. v. Commissioner,* 355 F.2d 928 (3d Cir. 1966), affg. per curiam a Memorandum Opinion of this Court, cert. denied 385 U.S. 815 (1966).

The petitioner's reliance on *John Richard Corp., supra,* is misplaced. In that case, the taxpayer's wool-processing mill was destroyed by fire, and for business reasons, the taxpayer caused another corporation to be formed to purchase a replacement mill. The taxpayer then purchased 99 percent of the new corporation's stock with the fire insurance proceeds. The Commissioner argued that the stock purchase did not qualify under section 1033 since the taxpayer could have directly purchased the mill. However, we rejected such argument:

we hold that petitioner's purchase of Peterborough Mills stock was made for the purpose of replacing its converted property. We find nothing in the statute or its

legislative history which justifies a conclusion that the stock purchase must have been necessary to the property's replacement in order to have been made for that purpose, as argued by respondent. *The stock purchase was made for the primary purpose of replacing the property* * * * [*John Richard Corp.,* 46 T.C. at 45; emphasis supplied.]

Here, the petitioner has failed to establish that he transferred the funds to TPT and acquired its stock for the purpose of replacing the condemned property.

Since the petitioner has failed to prove that he qualifies under section 1033, we hold that he must recognize the gain realized on the condemnation of a portion of the White tract in 1969. Thus, we need not consider the Commissioner's second argument that the petitioner did not "purchase" the TPT stock within the meaning of section 1033(a)(3)(A)(ii).

*Decision will be entered for the respondent.*