Philip Grove and Harriet F. Grove v. Commissioner.
Grove v. Commissioner
Docket No. 5745-68.
United States Tax Court
T.C. Memo 1972-98; 1972 Tax Ct. Memo LEXIS 158; 31 T.C.M. (CCH) 387; T.C.M. (RIA) 72098; April 27, 1972, Filed Mason G. Kassel, 25 Broadway, New York, N. Y., for the petitioners. Marwin A. Batt, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: Respondent determined deficiencies in income tax against the petitioners for the taxable years 1963 and 1964 in the amounts of $13,271.93 and $13,185.01, respectively. Certain issues having been conceded by petitioners, the only issue remaining for decision is whether petitioners realized dividend income as the result of redemptions of stock during 1963 and 1964, which stock had been donated by petitioner to a tax-exempt educational institution during 1961 and 1962, respectively. The deduction for allowable medical expenses for 1964 is in issue only because it depends upon the proper amount of adjusted gross income. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. Philip and Harriet F. Grove are husband and wife and, at the time of the filing of the petition herein, resided in New York, New York. They filed their joint Federal income tax returns for the taxable years 1963 and 1964 with the *160 district director of internal revenue for the district of Manhattan. As a matter of convenience, Philip Grove will hereinafter be referred to as the petitioner. Petitioner is an engineer. He graduated from Rensselaer Polytechnic Institute (hereinafter referred to as RPI) in 1924. RPI, a technological university founded in 1824, is a private, non-sectarian, co-educational institute of five schools: Architecture, Engineering, Humanities and Social Sciences, Management, and Science. It also has a graduate school and a professional school of engineering. It is an educational, nonprofit institution, tax-exempt under section 501(c)(3) of the Internal Revenue Code of 1954, as amended. 388 During 1963 and 1964, petitioner was, and had been for many years, the majority stockholder of Grove Shepherd Wilson & Kruge, Inc. (hereinafter referred to as Grove Shepherd or the corporation), a New York corporation engaged in the heavy construction business, such as the building of airfields, highways, tunnels, harbors, canals, and so forth. The stock ownership of the corporation as of December 31, 1962, December 31, 1963, and December 31, 1964, was as follows: *13 Grove Shepherd Wilson & Kruge, Inc.
Shares of Common Stock
Issued and Outstanding
At
At
At
31 Dec. 1962
31 Dec. 1963
31 Dec. 1964
Philip Grove
15,728
15,213
14,931
Grove Shepherd Wilson & Kruge, Inc. Voting Trust (Grove Children)
2,803
3,076
3,076
E. W. Shepherd
2,625
2,666
2,666
Odile Shepherd
41
82
82
Stephen Shepherd
41
82
82
George Kruge, Jr.
726
726
726
Sidney A. Houck, Jr.
431
470
509
John S. Withers
89
128
167
Neil Krumwiede
41
80
Rensselaer Polytechnic Institute 372
172
165
Total
22,856
22,656
22,484
*161 Note: Preferred Stock: Authorized - 2,000 shares par value $100.00 Issued - None Common Stock: Authorized - 33,000 shares, par value $100.00 Issued - As above Grove Shepherd was a private corporation whose stock was not traded on any stock exchange, and the stock was not readily marketable. During the period 1954 through 1964, Grove Shepherd had paid no dividends to its shareholders. During 1963 and 1964, it had a net worth in excess of one million dollars each year. All the business of Grove Shepherd was managed by its directors and officers as a group. During 1963 and 1964 it held no shareholder meetings. During those years, its directors were E. W. Shepherd, George Kruge, Jr., Sidney A. Houck, Jr., and petitioner. Shepherd, Kruge and Houck were all personal friends of long standing of petitioner. Shepherd had been the president of the corporation since 1945, and had been associated with it since about 1930. Houck was its treasurer, and had been 389 employed by it since 1942. Kruge was also employed by the corporation. Petitioner had been vice president of Grove Shepherd from 1954 through 1964. Grove Shepherd was engaged in an industry in which there was a high *162 rate of attrition. Seventy-three percent of the firms in the construction industry failed within two years of the beginning of their operations and 93% of all firms failed within ten years. Firms in the industry periodically had problems raising cash to meet their obligations. The management of Grove Shepherd was constantly concerned with the corporation's liquidity. They tried to be very careful in the management of the corporation's business and tried to minimize the corporation's risks as much as possible by sharing the risks through participation with others in joint ventures. Throughout its history Grove Shepherd had never experienced any difficulty in financing its obligations. During 1954, RPI was trying to raise money and sought to encourage contributions through the use of life income funds. Under such an arrangement, a donor would give stock to RPI, retaining a life interest in the income from the stock. In 1954, RPI's president talked to petitioner about the possibility of petitioner's contribution of stock. Petitioner explained to RPI's president that Grove Shepherd was a relatively small corporation that was not publicly owned and that there was no market for its shares. *163 He indicated that he might be willing to donate some of his stock in Grove Shepherd, but that the corporation could not agree to be obligated to redeem any of the stock which he might give. He also indicated that if any of the stock were redeemed, he wanted to insure that the funds would be invested under expert guidance because he was uncertain of RPI's ability to handle investments. On December 30, 1954, petitioner made a gift of 200 shares of the common stock of Grove Shepherd to RPI subject to certain conditions and restrictions set forth in an accompanying letter to RPI. Petitioner reserved the income from the stock to himself for his life and, if he should predecease his wife, then to his wife for her life. So long as the stock was held by RPI the income was to consist solely of the dividends paid thereon by Grove Shepherd. If RPI elected to dispose of the stock, the proceeds of such disposition had to be invested, either in shares of Massachusetts Investment Trust or Scudder, Stevens and Clark Fund or in a similar common fund designated by petitioner or his executors in his lifetime or the lifetime of his wife. The income reserved to petitioner was to be the income from such *164 fund. However, if permitted by petitioner or his executors, RPI could place the proceeds of such disposition commonly with the funds managed by the finance committee of RPI's board of trustees. Petitioner prohibited any publicity for his gift without his prior authorization. He also reserved the right to designate in the future the educational purpose for which the gift was to be used by RPI. Pursuant to the gift, Grove Shepherd and RPI executed a monority stockholders agreement dated December 30, 1954. The agreement provided in part as follows: WHEREAS, Stockholder owns certain shares of the common stock of the Corporation; and WHEREAS, Stockholder desires the Corporation to enter into agreements with the other minority stockholders similar to the within agreement, restricting the transfer of shares of common stock owned by said stockholders by granting the Corporation options to purchase the shares that any of said stockholders may desire to sell, transfer or otherwise dispose of, and options to purchase said stockholders' shares in the event of termination of siad stockholders' employment by the Corporation; NOW, THEREFORE, in consideration of the mutual covenants herein *165 contained, and for other good and valuable consideration, the parties hereto mutually agree as follows: 1. The Corporation hereby agrees to and shall enter into similar agreements with each of the minority stockholders of the Corporation. 2. Stockholder hereby agrees that he will not sell, transfer, give, pledge or hypothecate, or in any way dispose of the whole or any part of the common stock of the Corporation now or hereafter owned by him (including but not limited to shares of stock hereafter purchased, obtained by gift, by stock dividend or otherwise) until he shall have first offered the Corporation the opportunity to purchase said shares of stock upon the terms and conditions hereinafter provided. * * * The Corporation shall be entitled (but not obligated) to purchase all or any part of the shares of stock so offered. Under the agreement Grove Shepherd had sixty days after its receipt of a written 390 offer from RPI or its legal representative to exercise its right to purchase RPI's stock. Grove Shepherd agreed to give notice to RPI within those sixty days of whether it would accept any offer. Upon acceptance of the offer, the shares of stock were to be delivered to *166 the corporation and paid for by it. The purchase price was to be the book value of the stock computed under a formula provided in the agreement. If any of the stock offered by RPI was not purchased by Grove Shepherd, RPI had the right to transfer the stock to any other person at any price it saw fit. Such stock would thereafter be free of the restrictions of the agreement. It was provided that notice of the restrictions of the agreement was to be endorsed upon the certificates representing the shares of stock held by RPI. At various times agreements similar to this were executed by each of the other minority stockholders of Grove Shepherd. At the time of petitioner's gift of stock of Grove Shepherd to RPI in 1954 the president of RPI was the only official of RPI whom petitioner knew. Thereafter, petitioner became acquainted with all the officials of RPI. In May 1957, petitioner was elected a term trustee of RPI and served a four-year term until June 1961. In April 1965, he was elected a life trustee, and in October 1969, upon his resignation as a life trustee, he was elected as honorary trustee, which position he still holds. After he made his gift of 200 shares of Grove Shepherd *167 stock to RPI in 1954, petitioner continued making gifts of stock to RPI. All gifts were made on substantially the same terms. Some of the stock given to RPI was subsequently offered by it to Grove Shepherd and was purchased by the corporation. The following is a schedule of petitioner's donations of stock of Grove Shepherd to RPI, showing the redemption and amount thereof from 1954 through 1968: Date of
Number of
Date of
Amount Paid
Donation
Shares
Redemption
to R.P.I.
12/30/54
200
12/29/55
$ 23,000
12/21/55
220
12/28/56
25,300
12/26/56
220
12/23/57
26,840
12/11/57
205
12/27/58
26,035
12/29/58
195
11/6/59
24,570
12 /28/59
200
12/27/60
23,500
11/15/60
210
3/7/62
26,250
10/31/61
200
1/4/63
29,000
11/30/62
172
4/24/64
25,800
* 8/20/63
12/18/64
165
8/23/65
165
12/6/67
250
12/4/68
250 During the period from 1954 through 1968, petitioner was the only person associated with Grove Shepherd who made gifts to RPI. The petitioner's gift of 200 shares of the common stock of Grove Shepherd to RPI on October 31, 1961 was subject *168 to the same 391 conditions and restrictions as those of petitioner's gift in 1954, with one exception. Under the terms of this gift, if RPI elected to dispose of the stock, the proceeds of such disposition had to be invested under the direction of the investment counsel of Scudder, Stevens & Clark, Inc. (hereinafter referred to as Scudder, Stevens) or in such other manner designed by petitioner or his executors. Petitioner was to receive the income from the investments, less the cost of such investment counsel services. On October 31, 1961, Grove Shepherd issued stock certificate C-228 representing 200 shares of its common stock in the name of RPI and thereafter delivered the certificate to RPI. At that time the stock of Grove Shepherd had a book value of approximately $125 per share. In a letter to petitioner, dated December 29, 1961, RPI acknowledged petitioner's gift and the receipt of stock certificate C-228 issued in its name. On December 4, 1962, RPI wrote to Grove Shepherd offering it the right of first refusal for the purchase of the 200 shares of the corporation's stock represented by stock certificate C-228. On January 3, 1963, RPI's offer was brought up for discussion *169 at a special meeting of Grove Shepherd's board of directors. All of the corporation's directors were present at this meeting. RPI's offer was the only matter discussed at this meeting. The directors unanimously resolved to direct Houck to advise RPI of the corporation's willingness to redeem the 200 shares. On January 4, 1963, Houck wrote to Rpi/ agreeing to purchase the 200 shares represented by stock certificate C-228. A check dated January 9, 1963, was drawn by Grove Shepherd to the order of RPI in the amount of $29,000 which represented the full redemption price of the 200 shares represented by stock certificate C-228. On January 14, 1963, RPI wrote to Houck acknowledging receipt of Grove Shepherd's check for $29,000. On January 14, 1963, RPI sent a letter by registered mail to Houck enclosing stock certificate C-228 for redemption. Under a separate cover on that date, RPI also sent the corporation a stock power and a certified copy of its board of trustees' enabling resolution. The petitioner's gift of 172 shares of the common stock of Grove Shepherd to RPI on November 30, 1962 was subject to the same conditions and restrictions as those of petitioner's gift in 1961. On November 30, 1962, Grove *170 Shepherd issued stock certificate C-247 representing 172 shares of its common stock in the name of RPI and thereafter delivered the certificate to RPI. At that time the stock of Grove Shepherd had a book value of approximately $133 per share. In a letter to petitioner dated December 6, 1962, RPI acknowledged petitioner's gift and the receipt of stock certificate C-247 issued in its name. On December 7, 1963, RPI wrote to Grove Shepherd offering it the right of first refusal for the purchase of the 172 shares of the corporation's stock represented by stock certificate C-47. On April 24, 1964, RPI's offer was brought up for discussion at a special meeting of Grove Shepherd's board of directors. All of the corporation's directors were present at this meeting. RPI's offer was the only matter discussed at this meeting. The directors unanimously resolved to direct Houck to advise RPI of the corporation's willingness to redeem the 172 shares. On April 24, 1964, Houck wrote to RPI agreeing to purchase the 172 shares represented by stock certificate C-247. A check dated April 24, 1964, was drawn by Grove Shepherd to the order of RPI in the amount of $25,800 which represented the full redemption *171 price of the 172 shares represented by stock certificate C-247. On April 28, 1964, RPI wrote to Houck acknowledging the receipt of Grove Shepherd's acceptance of RPI's offer to sell the 172 shares and enclosing a stock power and a certified copy of RPI's board of trustees' enabling resolution. On April 29, 1964, RPI sent a letter by certified mail to Houck enclosing stock certificate C-247 for redemption. On April 29, 1964, under a separate cover RPI also sent a letter to Houck acknowledging its receipt of Grove Shepherd's check for $25,800 representing the redemption proceeds for the 172 shares of stock represented by stock certificate C-247. It was always the desire of Grove Shepherd's board of directors to redeem minority stockholders' stock when offered if the board felt that the corporation was in the financial position to do so. During the period from 1954 through 1964, the corporation was always in a financial position to redeem minority stockholders' stock and redeemed all such stock when it was offered for redemption. During the years 1963 and 1964 the only redemptions of stock by Grove Shepherd were those of stock held in the name of RPI in those years. Neither in those *172 two years nor at any previous time had the corporation redeemed any stock that was held by the petitioner in his name. 392 During the period from 1955 through 1964, RPI followed the same procedure with regard to the investment of the amounts that it had received in the different years on the redemptions of the stock of Grove Shepherd. After the first redemption which occurred in December 29, 1955, RPI opened an account with the Albany, New York, office of Merrill Lynch, Pierce, Fenner & Beane, known as the Renesselaer Polytechnic Institute (Philip H. Grove Fund) Account. RPI gave discretionary power to Merrill Lynch, Pierce, Fenner & Beane to act directly upon transaction recommendations made by Scudder, Stevens. Scudder, Stevens was also employed at this time as petitioner's personal investment adviser. Prior to opening the account with Merrill Lynch, Pierce, Fenner, & Beane, RPI sent a letter to Scudder, Stevens on January 5, 1956. RPI acknowledged its receipt of a letter from Scudder, Stevens wherein Scudder, Stevens outlined its understanding of the manner in which petitioner desired to have the investment recommendations for the redemption proceeds coordinated with his *173 overall investment program. RPI stated that it was pleased to conform with petitioner's wishes to act upon Scudder, Stevens' investment recommendations. RPI then went on to suggest that it would be desirable, and would simplify matters, for it to open a discretionary account with Merrill Lynch, Pierce, Fenner, & Beane, subject to Scudder, Stevens' investment recommendations. RPI stated that it would try to arrange to have copies of all information about the account forwarded on a monthly basis to petitioner, to Scudder, Stevens, and to itself and to have the income from the account paid to it, and it would then pay petitioner by its own check. RPI indicated that this arrangement would keep all interested parties fully and promptly informed and would avoid any possible delay that might result if Scudder, Stevens made its investment recommendations directly to RPI for action by it. Under the terms of the gifts of stock to RPI in 1961 and 1962, the proceeds of the redemptions thereof in 1963 and 1964, respectively, were invested under the direction of Scudder, Stevens. In a letter to Scudder, Stevens dated January 14, 1963, RPI indicated that the amount of $29,000 representing the redemption *174 proceeds of the 200 shares of Grove Shepherd stock represented by stock certificate C-228 was available for investment in its account with Merrill Lynch, Pierce, Fenner & Smith in accordance with Scudder, Stevens' recommendations. In a letter to Scudder, Stevens dated April 29, 1964, RPI also stated the same thing with regard to the amount of $25,800 representing the redemption proceeds of the 172 shares of Grove Shepherd stock represented by stock certificate C-247. During 1963 and 1964, the proceeds from the redemptions of RPI's stock in Grove Shepherd were generally invested in the securities of large publicly traded corporations. Some of the proceeds were invested in securities whose income was exempt from Federal taxation and produced between $200 and $300 of exempt income per year. Although petitioner had chosen Scudder, Stevens to make investment recomendations for RPI, he never directed it to make the particular investment recommendations which it did. The income from the investments was paid to RPI monthly. RPI, in turn, on a quarterly basis forwarded all of the income from the account to petitioner with an analysis of the transactions in the account. The analyses of the *175 account were reviewed by Houck when they were received. Petitioner paid and claimed deductions on his joint Federal income tax returns for the fees paid to Scuder, Stevens for its investment services with regard to the proceeds of the redemptions. On his joint Federal income tax return for the taxable year 1964 petitioner reported the receipt from RPI of income consisting of dividends in the amount of $6,096.05 and interest in the amount of $3,540.81. On his joint Federal income tax return for the taxable year 1963, petitioner did not specifically identify the receipt of any amounts of income from RPI. During 1963, he had received from RPI income consisting of dividends in the amount of $4,939.28, interest in the amount of $2,440.09 and interest on uninvested funds in the amount of $95.64. All such amounts were reported by petitioner as income for the taxable year 1963. During the years 1963 and 1964 Grove Shepherd had sufficient earnings and profits with which to pay dividends to its shareholders at least in the amounts of $29,000 in 1963 and $25,800 in 1964. In the notice of deficiency, the respondent determined that petitioner "realized additional dividends in the amounts *176 of $29,000.00 and $25,800.00 in 1963 and 1964, respectively, as the result of the redemption of stock by Grove Shepherd Wilson & Kruge, Inc." 393 Respondent accordingly increased petitioner's taxable income by those amounts for 1963 and 1964, respectively. There was no informal agreement between petitioner and RPI that RPI would offer the stock in question to the corporation for redemption or that, if offered, the corporation would redeem it. Opinion During 1961 and 1962, petitioner made gifts of stock of Grove Shepherd, in which he was the majority stockholder, to RPI, a tax-exempt educational institution, retaining the income therefrom for his life and, if he should predecease his wife, for his wife's lifetime. During 1963 and 1964 the corporation redeemed the stock that petitioner had given to RPI during 1961 and 1962, respectively. The issue presented for decision is whether petitioner realized dividend income as the result of such redemptions in 1963 and 1964. [1] The parties are agreed that during 1963 and 1964 the corporation had earnings and profits available for distribution as dividends in the amounts of the redemptions. *177 The respondent does not contend that the gifts of stock by petitioner to RPI in 1961 and 1962 were sham transactions, or that they were not completed gifts when made. Furthermore, he states on brief that he has not challenged the charitable contribution deductions which petitioner claimed in 1961 and 1962 with regard thereto. Nor is the respondent contending that RPI was under any enforceable obligation to subsequently offer the stock for redemption, or that, if offered, Grove Shepherd was under any obligation to redeem it. Rather, it is his position that when petitioner made the gifts of stock to RPI during 1961 and 1962 there was an understanding between them that the stock would be subsequently redeemed by the corporation. He argues that the circumstantial facts show that during the period from 1954 through 1964 there was a prearranged plan between them under which the gifts of stock and the subsequent redemptions thereof, including the redemptions in 1963 and 1964, were integrated single transactions. He states that petitioner was in complete control of the corporation at all times and could therefore ensure that the corporation would redeem the stock. Respondent contends that *178 by means of this plan, the petitioner sought to withdraw funds from the corporation without paying tax on the distributions and to have the proceeds of the redemptions invested for his sole benefit, receiving the 394 income therefrom for his life. He contends that this was the substance of the transactions and that the substance should prevail over the form, citing Commissioner v. Court Holding Company, 324 U.S. 331. He then argues that the essential relationship of all stockholders in the corporation remained substantially the same after the redemptions, and that therefore, under the rationale of United States v. Davis, 397 U.S. 301, the entire proceeds of the redemptions were essentially equivalent to dividends and should be so taxed to petitioner. In his original brief the respondent stated that an alternative argument might have been available to him in this case, namely, that at least that portion of the redemption proceeds attributable to the life estate which petitioner retained in the stock should be taxable to him as a dividend. He stated, however, that since the issue was not properly raised, he does not make this argument for purposes of *179 this case. In his reply brief the petitioner states that such alternative argument would not be rebutted or answered because the respondent was not making such argument in this case. Accordingly, we express no opinion with respect to the merits of such an argument, and will consider the case solely upon the basis of the contentions made by the parties. The petitioner contends that the step transaction doctrine or the substance over form doctrine is not applicable in this case. It is his position that the gifts of stock which he made to RPI in 1961 and 1962 were completed gifts when made since RPI was under no obligation to subsequently offer the stock to the corporation for redemption, and that the subsequent redemptions in 1963 and 1964 from RPI cannot result in the realization by petitioner of income therefrom. He states that since he no longer owned the stock in 1963 and 1964, the redemptions must be considered as having been made by Grove Shepherd from RPI and not from him. He denies the existence of any prearranged plan as claimed by respondent, and further contends that even if there were such a plan it would be immaterial, stating that the controlling factor is whether there *180 was an obligation on RPI to offer the stock for redemption and, if offered, an obligation on the corporation to redeem. As presented to us by the parties the only question for decision is whether the proceeds of the redemptions are all to be attributed to RPI or to the petitioner. The respondent is urging that we hold that the substance of the transactions amounted to distributions to petitioner upon the redemption of stock from him, and then gifts of the proceeds of the redemptions to RPI. It is well established that a taxpayer may arrange his affairs so as to reduce, or alltogether avoid, taxes in any way that the law allows. See, e.g., Gregory v. Helvering, 293 U.S. 465; Jones v. Grinnell, (C.A. 10) 179 F. 2d 873; Redwing Carriers, Inc. v. Tomlinson, (C.A. 5) 399 F. 2d 652. It is equally well settled, however, that where the form used by the taxpayer exists solely to alter tax liabilities, the Court will ignore the form used and look to the substance of the transactions. See Commissioner v. Court Holding Co., supra.Transactions *181 entered into for no motive other than to escape taxation will be disregarded for tax purposes. See Weller v. Commissioner, (C.A. 3) 270 F. 2d 294, cert. denied 364 U.S. 908. Thus, the present case resolves itself into a factual controversy of whether there was a prearranged plan between petitioner and RPI under which the transactions entered into by them were designed solely to allow petitioner to withdraw funds from the corporation and have such funds invested for his life, avoiding the tax on such withdrawals to him by use of RPI's tax-exempt status. We have carefully examined the record in this case and have concluded that there was not such a plan having as its sole motive tax avoidance. There is no intimation that petitioner ever had in mind having any of his stock in the corporation redeemed so that the proceeds could be invested. Prior to his first gift of stock to RPI in 1954 petitioner had never had any of the stock that he owned in the corporation redeemed. When the gifts of stock were made we think that it was not the petitioner's sole intention to withdraw funds from the corporation and avoid the tax thereon. We note that the transactions *182 in question commenced because of RPI's approach to petitioner to make a contribution of stock in accordance with its life income plan. We think it obvious that because of his close ties to RPI and involvement in its affairs petitioner intended to make contributions to RPI and was willing to do so by means of the 395 vehicle that it had chosen for this purpose. This is what he did, the effect of which was that he made completed gifts of stock and RPI obtained valuable property subject to petitioner's retained life estate. It is true, of course, that the corporation had a history of not paying dividends on the stock and that there was no ready market for the stock. Therefore, it would be reasonable to conclude that the parties knew that it would be necessary for the stock to be redeemed and the proceeds reinvested in income-producing securities if the petitioner's retained interest was to produce income. Also, it is reasonable to conclude that petitioner, through his control of the corporation, could ensure redemption if the corporation was financially able to redeem. Furthermore, the fact of the repetition of the transactions from 1954 through 1964 tends to support the view that *183 the parties contemplated that all the stock given might be redeemed. However, the formal agreements did not obligate either RPI to offer the stock for redemption or the corporation to redeem the stock if offered. Furthermore, we accept as true the petitioner's testimony that there was no informal agreement to such effect. And, while petitioner controlled the corporation, he did not control RPI, We have accordingly concluded that there was not such an arrangement between petitioner and RPI from which it could be found that RPI was acting as merely an agent or a conduit for petitioner in presenting the stock for redemption. In other words, we cannot conclude that there was an agreement between RPI and petitioner to the effect that petitioner would give RPI a remainder interest in the stock solely as consideration for its agreement to cooperate by using its tax-exempt status to withdraw funds from the corporation tax free for petitioner's benefit. In view of the foregoing, it is our conclusion that the stock in question was redeemed from RPI, that it cannot be considered that the stock was redeemed from petitioner, and that therefore the respondent erred in his determination that the *184 proceeds from the redemptions constituted taxable income to the petitioner. We reiterate that we express no opinion upon the question, if it were properly presented, whether petitioner derived taxable income upon the redemptions of stock to the extent of the life estate which he retained in the stock. Decision will be entered under Rule 50. Footnotes
*. The gift on August 20, 1963 was of the stock of Thompson Construction Corporation.↩
1. Pertinent provisions of the Internal Revenue Code of 1954 are: SEC. 301. DISTRIBUTIONS OF PROPERTY. (a) In General. - Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a))made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c). (b) Amount Distributed. - (1) General rule. - For purposes of this section, the amount of any distribution shall be - (A) Noncorporate distributees. - If the shareholder is not a corporation, the amount of money received, plus the fair market value of the other property received. * * * (c) Amount Taxable. - In the case of a distribution to which subsection (a) applies - (1) Amount constituting dividend. - That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income. SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK. (a) General Rule. - If a corporation redeems its stock (within the meaning of section 317 (b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock. (b) Redemptions Treated as Exchanges. - (1) Redemptions not equivalent to dividends. - Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend. * * * (d) Redemptions Treated as Distributions of Property. - Except as otherwise provided in this subchapter, if a corporation redeems its stock (within the meaning of section 317(b)), and if subsection (a) of this section does not apply, such redemption shall be treated as a distribution of property to which section 301 applies. SEC. 316. DIVIDEND DEFINED. (a) General Rule. - For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders - (1) out of its earnings and profits accumulated after February 28, 1913, or (2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection. SEC. 317. OTHER DEFINITIONS. * * * (b) Redemption of Stock. - For purposes of this part, stock shall be treated as redeemed by a corporation if the corporation acquires its stock from a shareholder in exchange for property, whether or not the stock so acquired is cancelled, retired, or held as treasury stock.↩