**TAFT BROADCASTING COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. C-1-86-0524.**

United States District Court, S.D. Ohio.

June 7, 1988.

James J. Ryan, Cincinnatti, Ohio, for plaintiff.

Robin Greenhouse, Washington, D.C., for defendant.

## ORDER

**CARL B. RUBIN, Chief Judge.**

This matter is before the Court on cross motions for summary judgment filed by plaintiff Taft Broadcasting Company (doc. no. 13) and defendant United States of America (doc. no. 14), upon memoranda in support of and in opposition to such mo-

tions (doc. nos. 15, 17) and upon the parties' stipulation of facts (doc. no. 11). Plaintiff seeks a refund of federal income taxes paid for the tax period beginning April 1, 1972 and ending March 31, 1973 (the 1973 Tax Year). The sole question before the Court is whether plaintiff pursuant to section 1033 and of the Internal Revenue Code of 1954[1] is entitled to nonrecognition of a gain realized by it from the sale of two radio stations in the 1973 Tax Year.

### Facts

The following facts material to this decision have been stipulated. (Doc. no. 11). On March 22, 1957, plaintiff acquired radio stations WBRC–AM and WBRC–FM of Birmingham, Alabama ("the Birmingham stations") at an original cost of $694,378 and with an adjusted basis, as of March 31, 1973, of $388,817. During the 1973 Tax Year, plaintiff sold the Birmingham stations in a sale certified by the Federal Communication Commission (FCC). The total proceeds received by plaintiff from this sale was $2,050,000 resulting in a capital gain for plaintiff of $1,633,456. Plaintiff elected to defer recognition of this gain pursuant to Treasury Regulation 1.1071–2(a)(1)(i) and section 1033 of the Code and attached a written election to its federal income tax return for the 1973 Tax Year. Such election required plaintiff to purchase property of a "like kind" within a two year period, expiring on April 1, 1975.

On July 29, 1974, plaintiff entered into an Asset Purchase Agreement to acquire radio stations KQV–AM and WDVE–FM, located in Pittsburgh, Pennsylvania (the "Pittsburgh stations"). The Asset Purchase Agreement states that the price to be paid for the Pittsburgh stations is $3,500,-000 subject to certain adjustments not at issue in this case. The Asset Purchase Agreement also provides that plaintiff may assign its rights and agreement to a corporation wholly owned by plaintiff.

Thereafter, on October 17, 1974, plaintiff's Board of Directors authorized the in-

---

**1.** All references herein to the "Code" or to Code sections shall refer to the Internal Revenue Code of 1954.

corporation of the wholly owned subsidiary, Taft Broadcasting Company of Pennsylvania, Inc. (Taft of Pennsylvania) and at the same time authorized the assignment to it of the Asset Purchase Agreement. On October 18, 1974 the articles of incorporation of Taft of Pennsylvania were filed with the Secretary of State of Ohio. On October 22, 1974, plaintiff purchased 100 shares of stock of Taft of Pennsylvania for the total of $1,000 and assigned its interest in the Asset Purchase Agreement. Taft of Pennsylvania acquired title to the Pittsburgh Station on December 16, 1974 pursuant to the Asset Purchase Agreement. On December 17, 1974, plaintiff purchased additional stock of Taft of Pennsylvania for $2,049,000 and, as well, made a loan to Taft of Pennsylvania in the amount of $1,550,-751. That same day, Taft of Pennsylvania completed payment of the purchase price to the seller of the Pittsburgh stations pursuant to the Asset Purchase Agreement.

On September 19, 1977, plaintiff filed a claim for refund of taxes in the amount of $639,881 which had been paid by plaintiff for the 1973 Tax Year. The refund claim was based on a carryover of investment tax credit determined to a different subsidiary of plaintiff for which the plaintiff had filed a consolidated return for the 1973 Tax Year. On June 13, 1984 the Internal Revenue Service advised plaintiff that $585,404 of its refund claim would be disallowed. Such disallowance was based on the IRS's conclusion that pursuant to sections 1033 and 1071 of the Code plaintiff was not entitled to nonrecognition of the gain realized from its sale of the Birmingham stations in the 1973 Tax Year.

## Discussion

Section 1071(a)[2] of the Code provides that if sale or exchange of property is certified by the FCC to be necessary or appropriate to effectuate a change in a policy of, or in the adoption of a new policy by, the FCC with respect to the ownership and control of radio broadcasting stations, the taxpayer may elect to treat such sale or exchange as an involuntary conversion within the meaning of section 1033 of the Code. It is undisputed that the sale of the Birmingham Stations by plaintiff was certified by the FCC and that plaintiff elected on its 1973 tax returns not to recognize the gain from such sale.

Section 1033[3] of the Code governs the federal income tax treatment of involun-

2. Section 1071 provides:
§ 1071. Gain from sale or exchange to effectuate policies of F.C.C.
(a) Nonrecognition of gain or loss. If the sale or exchange of property (including stock in a corporation) is certified by the Federal Communications Commission to be necessary or appropriate to effectuate a change in a policy of, or the adoption of a new policy by, the Commission with respect to the ownership and control of radio broadcasting stations, such sale or exchange shall, if the taxpayer so elects, be treated as an involuntary conversion of such property within the meaning of section 1033. For purpose of such section as made applicable by the provision of this section, stock of a corporation operating a radio broadcasting station, whether or not representing control of such corporation, shall be treated as property similar or related in service or use to the property so converted. The part of the gain, if any, on such sale or exchange to which section 1033 is not applied shall nevertheless not be recognized, if the taxpayer so elects, to the extent that it is applied to reduce the basis for determining gain or loss on sale or exchange of property, of a character subject to the allowance for depreciation under section 167, remaining in the hands of the taxpayer immediately after the sale or exchange, or ac-

quired in the same taxable year. The manner and amount of such reduction shall be determined under regulations prescribed by the Secretary. Any election made by the taxpayer under this section shall be made by a statement to that effect in his return for the taxable year in which the sale or exchange takes place, and such election shall be binding for the taxable year and all subsequent taxable years.
(b) Basis.
For basis of property acquired on a sale or exchange treated as an involuntary conversion under subsection (a), see section 1033(b).

3. Section 1033 provides in pertinent part:
SEC. 1033. INVOLUNTARY CONVERSIONS.
(a) *General Rule.*—If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—
(1) *Conversion into money where disposition occurred prior to 1951.*—Into money, and the disposition of the converted property occurred before January 1, 1951, no gain shall be recognized if such money is forthwith in good faith, under regulations prescribed by the Secretary or his delegate, expended in the acquisition of

tary conversions. This section permits the nonrecognition of any gain realized if property is compulsorily or involuntarily converted into property similar or related in service or use to the converted property within a two year period. There is likewise no dispute that the Pittsburgh stations are "similar or related in service" to the Birmingham stations sold by plaintiff. The dispute comes into play concerning the method by which plaintiff came to control the Pittsburgh stations.

The enactment of section 1071 modified section 1033 to permit the purchase of "stock of a corporation operating a radio braodcasting station, whether or not representing control of such corporation" to be treated as "like kind" property. Plaintiff argues that its purchase of stock in its wholly owned subsidiary, Taft of Pennsylvania, falls under this provision. Defendant argues, however, that Taft of Pennsylvania did not own nor operate the Pittsburgh stations at the time that plaintiff purchased the stock on December 17, 1974. Alternatively, defendant argues that even if Taft of Pennsylvania did operate a radio broadcast station within the meaning of section 1071 on December 17, 1974, it did not operate a radio station on October 22, 1974 when plaintiff acquired its first 100 shares of stock in Taft of Pennsylvania for $1,000. Plaintiff's purchase of stock on December 17, 1974 for $2,049,000 defendant claims, was merely a contribution to capital and not a purchase of stock in "acquisition of a corporation" since plaintiff already owned 100% of Taft of Pennsylvania.

■ Defendants second argument must fail. In applying section 1071 to section 1033, defendant interprets the limitations of 1071 to eliminate merely the word control from the language in section 1033 which requires "purchase of stock in the acquisition of control of a corporation ..." Defendant's interpretation, however, is untenable. Section 1071 eliminated the necessity of purchasing control shares of a corporation and thus the necessity to "ac-

the other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund. If any part of the money is not so expended, the gain shall be recognized to the extent of the money which is not so expended (regardless of whether such money is received in one or more taxable years and regardless of whether or not the money which is not so expended constitutes gain). For purposes of this paragraph and paragraph (2), the term "disposition of the converted property" means the destruction, theft, seizure, requisition, or condemnation of the converted property, or the sale or exchange of such property under threat or imminence of requisition or condemnation. For purposes of this paragraph and paragraph (2), the term "control" means the ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and at least 80 percent of the total number of shares of all other classes of stock of the corporation.

(2) *Conversion into money where disposition occurred after 1950.*—Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph (1)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:

(A) *Nonrecognition of gain.*—If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. Such election shall be made at such time and in such manner as the secretary or his delegate may by regulations prescribe.

(B) *Period within which property must be replaced.*—The period referred to in subparagraph (A) shall be the period beginning with the date of the disposition of the converted property, or the earliest condemnation of the converted property, whichever is the earlier, and ending—

(i) 2 years after the close of the first taxable year in which any part of the gain upon the conversion is realized, or

(ii) subject to such terms and conditions as may be specified by the Secretary or his delegate, at the close of such later date as the Secretary or his delegate may designate on application by the taxpayer. Such application shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe.

quire" a corporation to comply with the statute. Purchase of stock in a corporation is indeed sufficient regardless of whether or not such purchase results in a greater proprietory interest for the purchaser. *Compare Broadview Lumber Co., Inc. v. United States,* 561 F.2d 698 (7th Cir.1977).

Turning back to defendant's first argument, that plaintiff's December 17, 1974 purchase of stock in Taft of Pennsylvania was not a purchase of "like kind" property because Taft of Pennsylvania did not operate a radio station on that date, the Court determines that this argument must also fail. While it is true that Taft of Pennsylvania did not complete payment of the purchase price to the seller for the Pittsburgh stations until after it received the proceeds from plaintiffs purchase of Taft of Pennsylvania's stock,[4] Taft of Pennsylvania had acquired title to the Pittsburgh stations on December 16, 1974 and indeed had held the Asset Purchase Agreement since October 22, 1974. Since technically Taft of Pennsylvania did not "operate" the Pittsburgh stations until after final closing of the transaction, defendant urges the Court to strictly construe section 1071 and refuse to allow plaintiff's nonrecognition of the gain.

 The Court does not agree with defendant's reasoning. Section 1033 and 1071 are relief provisions and thus should be liberally construed. *E.R. Hitchcock Co. v. United States,* 382 F.Supp. 236 (D.Conn. 1974) aff'd. 514 F.2d 484 (2d Cir.1975); *Frank G. Templeton,* 67 T.C. 518 (1976); *John Richard Corp.,* 46 T.C. 41 (1966). Moreover, in income tax cases, the courts will look through the form of a business transaction and rule on the basis of its substance. *Commissioner v. Hansen,* 360 U.S. 446, 461, 79 S.Ct. 1270, 1278–79, 3 L.Ed.2d 1360 (1959), *Hoffman Motors Corp. v. United States,* 336 F.Supp. 102 (S.D.N.Y.1971) *aff'd in part and remanded in part,* 473 F.2d 254 (2d Cir.1973). The substance of this transaction is that plaintiff acquired stock in a subsidiary which was set up to operate newly acquired radio stations. Both the stock purchase by plaintiff and the closing on the Pittsburgh stations occurred within a few hours of each other. The substance of this transaction complies with the statutory requirements of sections 1071 and 1033. Moreover, the Tax Court has agreed with this position in *John Richard Corp.,* 46 T.C. 41 (1966).

In that case, the taxpayer's corporation's wool processing plant was destroyed, and for business reasons, the taxpayer created a new corporation for the purpose of purchasing and operating a new wool processing plant. The taxpayer purchased 99% of the new corporation's stock and shortly thereafter, the new corporation acquired a mill that was "similar to" the prior plant. The Tax Court found that:

> The entire transaction, including the location of and negotiations for the new mill occurred within a period of 1 month. The acquisition of the stock and the purchase of the mill occurred within a few hours, if not actually at the same time and place. Petitioner's purchase of the stock and the acquisition of the mill by Peterborough Mills were separated in point of time only so far as was required by business practicalities. Any distinction in the application of the statute under these circumstances and in a corporation which previously owned the property is too technical to be justified and would fail to give effect to the statutory purpose to allow tax-free replacement of involuntarily converted property through the purchase of other property or stock. [46 T.C. at 47.]

Likewise, plaintiff's acquisition of stock in Taft of Pennsylvania and the purchase of the Pittsburgh stations were "merely steps in an integrated transaction having for its purpose the replacement of petitioner's involuntarily converted property." *Id.* See also *Clifton Investment Co. v. Commissioner,* 36 T.C. 569 (1961) *aff'd.,* 312 F.2d 719 (6th Cir.1963).

Although the IRS subsequently filed a nonacquiescence in the *John Richard*

---

4. Payment was completed on December 17, 1974, the same day on which plaintiff purchased the stock from Taft of Pennsylvania.

*Corp.* decision, no court has overruled that decision. *See Lester Howard Kahl,* T.C. Memo 1986–240 (factually distinguishing *John Richard Corp.* but leaving holding intact). Therefore the Court follows the decision in *John Richard Corp.* and holds that plaintiff is entitled to elect nonrecognition of its gain realized in the sale of the Birmingham stations during the Tax Year of 1973.

### Conclusion

For the above stated reasons, the Court determines that plaintiff is entitled to non-recognition of the gain realized in the sale of its Birmingham stations during the Tax Year of 1973. Plaintiff fulfilled the statutory requirements of sections 1071 and 1033 in replacing such stations with property "similar or related" thereto. Accordingly, the Court hereby grants plaintiff's motion for summary judgment and determines that plaintiff is entitled to a tax refund in the amount of $585,404. Defendant's cross motion for summary judgment is hereby denied.

IT IS SO ORDERED.