Farrell B. Sumner and Mary C. Sumner v. Commissioner.
Sumner v. Commissioner
Docket No. 1941-68.
United States Tax Court
T.C. Memo 1969-156; 1969 Tax Ct. Memo LEXIS 140; 28 T.C.M. (CCH) 777; T.C.M. (RIA) 69156; July 24, 1969, Filed *140 Held: Petitioners have failed to prove that they provided more than one-half of the support for two of Mary's children in 1966, and, therefore, are not entitled to deductions for personal exemptions. Secs. 151(a), 151(e), and 152(a), I.R.C. 1954. Ottway Burton, Asheboro, N.C., for the petitioners. J. Randall Groves, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined a deficiency in petitioners' *141 income tax for the calendar year 1966 in the amount of $286.37. The only question presented is whether petitioners provided more than one-half of the total support of Mary's son, Stanley E. Cottrell, and daughter, Linda K. Cottrell, during 1966. A computation under Urle 50 will be necessary due to a concession made by the respondent. Findings of Fact Those facts which were stipulated are found accordingly, and incorporated herein by this reference, together with the stipulated exhibits. Petitioners herein are husband and wife and were residing in Randolph County, North Carolina, at the time the petition was filed. Their joint income tax return for the calendar year 1966 was timely filed with the director of the internal revenue service center at Chamblee, Georgia. Mary C. Sumner was previously married to Harvey C. Cottrell. Stanley E. Cottrell and Linda K. Cottrell were the lawful issue of that marriage. On June 1, 1961, Mary and Harvey were separated. On July 17, 1963, they were divorced, and Mary was given custody of the two children by virtue of a local court order. On July 19, 1963, Farrell B. Sumner and Mary were married. They subsequently had two children, Shawn Renee *142 Sumner, born July 17, 1964, and Charlotte Lynn Sumner, born February 8, 1966. During the taxable year 1966, Stanley E. and Linda K. Cottrell were approximately 16 and 13 years of age, respectively. Due to the total disability of the father of these two children, Harvey C. Cottrell, the petioners received the sum of $1,490.40 in social security benefits during 1966, $745.20 being allocated to each child. During the year in issue, Farrell was employed as a truck driver by R. L. Honbarrier, Jr., doing business in High Point, North Carolina, and by Colonial Motor Freight Lines, Inc. He received gross salaries from Honbarrier and Colonial in the respective amounts of $9,247.18 and $182.50. The net salaries received from the abovenamed employers after state and Federal taxes had been withheld were in the amounts of $7,906.65 and $164.30, respectively. During the taxable year Mary received a gross salary from Periodical Publishers' Service Bureau, Inc. in the amount of $16.87. Mary's net salary from this source after taxes were withheld amounted to $15.37. Mary also received $180 as salary from Davis Used Cars. Her net salary from the latter source after taxes were withheld amounted to *143 $159.02. 778 Also during 1966, petitioners received a refund of Federal income taxes in the amount of $167.85, and a refund of North Carolina income taxes of $57.10. Petitioners were also reimbursed in the amount of $300 by the Hartford Insurance Company for the loss of certain food products caused by an electrical power failure in their food freezer. Petitioners also received $528.14 during 1966, representing the sum of two separate loan transactions entered into by petitioners with Capital Credit Plan of Asheboro, Inc., a corporation doing business in Asheboro, North Carolina. One of these obligations, the exact amount of which is not disclosed by the record, was incurred for the purpose of purchasing a large quantity of meat for the family. During 1966 petitioners made payments on these two loans totaling $342.94. During the year in issue the petitioners also refinanced a loan with Century Finance Company, located in Asheboro, North Carolina, from which they obtained an additional sum of $209.44. Petitioners made payments totaling $339.40 on this loan account during 1966. On or about May 5, 1966, the petitioners entered into a credit transaction with the First National *144 Bank, Asheboro, North Carolina. They received the sum of $537 as net proceeds of the loan. The petitioners made timely installment payments pursuant to the terms of the contract in the total amount of $233.68 during 1966. During the course of the taxable year the petitioners entered into several credit transactions with Sheration Finance Corporation, doing business in Asheboro, North Carolina. In May, 1966, Sheraton financed in full the purchase of a vacuum cleaner which cost $189. Petitioners also entered into an installment contract with Sheraton under which they incurred an obligation representing the purchase price of a farm tractor in the total amount of $1,100. [1] Also during that year petitioners borrowed an additional $500 from Sheraton. The petitioners made payments on five separate obligations to Sheraton Finance Corporation during the year 1966 as follows: Security
Number ofPayments
Amount ofPayment
Amount Repaid
Tractor
3
$65.40
$ 196.20
Chevrolet Truck
5
59.45
297.25
Cadillac
9
88.15
793.35
Truck and Cadillac
4
67.30
269.20
Renault
7
26.20 183.40 $1,739.40
*145 During the first eight and one-half months of 1966 petitioners lived in a brick home located a few miles east of Asheboro, North Carolina. They had purchased this property, together with three and one-half acres of land, in January 1964 for $10,800. At the time of the purchase, petitioners obtained an $8,000 loan secured by a mortgage on the property from Randoph Savings and Loan Association, Asheboro, North Carolina. As of January 1, 1966, petitioners had reduced the balance due on their loan to $7,361.92. The property was sold during the summer of 1966. After making their final mortgage payment on August 2, 1966, the balance remaining on the loan was $7,112.33. During 1966 petitioners made mortgage payments on the Asheboro property totaling $540.08, which amount includes interest charges of $290.49. The record does not disclose any amount for property insurance premiums paid during the year. Real estate taxes were paid in the amount of $75.60. [2]
During 1966 petitioners contracted to purchase a farm *146 near Franklinville, North Carolina, consisting of a brick house and 29 1/2 acres of land. A down payment was made in September, 1966, consisting of the equity in the Asheboro property plus $1,000. The petitioners obtained the necessary $1,000 by executing a 90-day note payable to the First National Bank in that amount, which note was renewed on December 5, 1966. The first mortgage 779 payment on the new property did not become due until February 1, 1967. At all times during 1966 the petitioners and their four children lived together as a family unit. [3] Mary Sumner, petitioner herein, took on the responsibility of managing the family's financial affairs. She bought most of the food, clothing, and other necessities for the whole family, and paid the bills. She did not keep a record of these purchases and expenditures. With the exception of the social security benefits of $1,490.40 allocable equally to Stanley and Linda, the petitioners provided all of the funds necessary for the support of those two children. Although it appears that more money *147 was spent on food and clothing for Stanley and Linda, who were both of teen age, than was spent on the two younger children during the taxable year, the record is devoid of any evidence as to the amounts expended in this regard. Petitioners have not even provided us with estimates of such expenditures. In their joint income tax return for 1966 petitioners claimed dependency exemptions for all four of their children. Respondent disallowed the exemptions claimed for Stanley and Linda. Although respondent originally disallowed $420.59 of the $794.76 of medical expenses claimed by petitioners in their return, it has now been stipulated that these expenditures were fully substantiated. Of the total amount of $794.76 in medical expenses incurred by petitioners, nothing was attributable to Linda and only $31 was expended on behalf of Stanley. Respondent allowed a deduction for out-of-pocket "road expenses" of $1,560 and laundry expenses of $92.50 for uniforms incurred by Farrell Sumner in connection with his employment as a truck driver. Ultimate Finding of Fact Petitioners did not contribute over one-half of the total support of Stanley or Linda during 1966. Opinion The question *148 presented for our decision is whether the petitioners are entitled to deductions in 1966 for personal exemptions for Mary's two oldest children, Stanley and Linda, as dependents under section 151(a) and (e)(1). [4]
Section 152(a) includes in its definition of a "dependent" a son, daughter, stepson, or stepdaughter of the taxpayer over half of whose support was received from the taxpayer. The burden of proof is on the petitioners to prove not only their own expenditures in support of each child, but also that those amounts exceeded one-half of the total support provided in each instance. Aaron F. Vance, 36 T.C. 547 (1961); Bernard C. Rivers, 33 T.C. 935 (1960). Although petitioners need not conclusively prove the exact or precise total cost of the support for each child, they must provide us with convincing evidence establishing that the amounts they provided exceeded one/half of the total support. James E. Stafford, 46 T.C. 515 (1966). During the year in question Mary and Farrell, petitioners herein, provided the total amount of support for Stanley and Linda with *149 the exception of $1,490.40 in social security benefits, $745.20 of which was allocated to each of these children. For the purpose of computing the total amount of contributions for the support of an individual, social security benefits received by him, or on his behalf, are considered to be contributed by the individual. Section 1.152-1(a)(2)(ii), Income Tax Regs.[5] In order for petitioners to prevail in this case, they must prove that the total amount provided for the support of each child was more than double the $745.20 in social security benefits. We must take into account the entire amount of support which each child has received, including the $745.20 which each child has in effect supplied. Estela De La Garza, 46 T.C. 446 (1966), affirmed per curiam 378 F. 2d 32 (C.A. 5, 1967).
*150 During the course of the trial of this case, Mary testified that she took on the responsibility of managing the family's financial affairs. She bought most of the food, clothing and other necessities for the whole family, and paid the bills. She did not keep a record of these purchases and expenditures. At the trial, the petitioners did not 780 attempt to estimate the amounts actually expended on behalf of each child for most of the basic support items. In this respect it is significant that the record is totally devoid of evidence as to the amount of any expenditures for food and clothing for these children. Although the record establishes the total amount of mortgage payments made by the petitioners on their Asheboro residence, where they lived with their children during the first eight and one-half months of 1966, we have held in previous cases that the fair rental value of lodging furnished is the proper measure of the amount of support furnished. Eva L. Lindberg, 46 T.C. 243 (1966); Emil Blarek, 23 T.C. 1037 (1955). Petitioners have made no showing at all in regard to the fair rental value of either of their two residences during the taxable *151 year. This Court has held that where no evidence is brought to light concerning the fair rental value of the lodging, petitioner fails in his burden of proof. Richard P. Prickett, 18 T.C. 872 (1952). With the exception of a few small items which could not possibly affect our determination here, the petitioners have failed to produce any evidence of actual or approximate amounts which they contributed toward the individual support of either Stanley or Linda. Instead, petitioners have only shown that they, Mary and Farrell, received a total cash equivalent of $14,324.27 during 1966 from net earnings, cash loans, installment purchase contracts, and social security benefits. Petitioners then claim that the difference between the total amount received and the $1,400.40 in social security benefits, or $12,833.87, was "spone" by them on behalf of the entire family and therefore represents their contribution toward the "support" of the family. Regarding the individual support of the children in issue, petitioners merely allege that Stanley and Linda required more food and clothing than the other members of the family due to the fact that they were growing children who were 16 *152 and 13 years of age during 1966. Petitioners then urge the Court to find, on the basis of this information alone, that they provided over one-half of the total amount contributed toward the support of these two children. This we cannot do. It is necessary to point out that the $12,833.87 which petitioners claim to have contributed toward the support of the entire family in 1966 represents an unrealistically high estimate of that amount. The record reveals that a large portion of that amount constituted earnings which were used, and obligations which were incurred, for nonsupport items. In order to determine the maximum amount which could have been available for the support of the family members, it would therefore be necessary to exclude those items. Patent examples of such expenditures in this case include the purchase of a tractor, the down payment on the Franklinville farm, and the purchase of a vacuum cleaner, all of which constitute capital expenditures which are not in the nature of support items. It would also be necessary to exclude the mortgage payments made with respect to the Asheboro residence because, as we have previously indicated, the proper measure of support for *153 lodging furnished is the fair rental value. We would also have to eliminate almost all of the medical expenses which were obviously not incurred for Stanley or Linda as well as Farrell's "road" and "uniform cleaning" expenses which alone totaled over $1,650 in the year before us. Petitioners have included the proceeds of various obligations incurred by them in 1966 in the total amount which they allegedly received and contributed toward the family's support. Clearly the payments made during 1966 in reduction of these and all other pending obligations do not represent contributions toward the support of the family. Accordingly, these loan repayments should be excluded in determining the maximum amount which could have been available for the support of the entire family. [6]
Assuming that we could then arrive in our computations at an amount with which we could be satisfied as representing the total value of support provided from all sources for *154 the entire family, petitioners then urge us to estimate the total amount specifically allocable to Stanley and Linda. The only guideline which we are given for such estimation is the testimony of Mary that these two children required more food and clothing than the other family members. 781 Petitioners have the burden of proving their right to the exemptions claimed, and the right in this case is contingent upon the total amount of expenditure for the support of the children here involved. The petitioners have produced no substantial evidence in this regard, and therefore have failed to carry their burden of proof. Bernard C. Rivers, supra.At most petitioners have shown that approximately $6,850 was available to support the family of six members in 1966, but other evidence before us indicates that even this amount was not all spent for support nor was it all available for even division among the family members. It is noted that in some situations the Commissioner has mitigated the taxpayer's burden of proving the total amount provided for the support of an individual member of a household. He has ruled that in situations where several members of a household are *155 contributing toward the support of the household jointly, and where there is no actual record of the expenses relating to the support of each member, it may be presumed that the expenses were incurred equally for each member. [7] We need not consider the propriety of giving petitioners the benefit of such a presumption in the instant case. We find that to do so would result in a total amount provided for the support of each child which is less than the amount which petitioners are required to prove in order to avail themselves of the dependency exemptions in issue. The petitioners have made no effort to approximate the total amount which was provided for the support of either Stanley or Linda. In addition, they have not produced evidence which would indicate that the total support of either child was, at the least, more than double the amount received by each child in social security benefits. Since we are not at liberty to make approximations or guesses with regard to total support, it is impossible for us to conclude that petitioners have carried their burden of proving that *156 they provided more than onehalf of the support of these children. The evidence before us indicates that they did not and that actually and in fact Stanley and Linda each contributed more than one-half of their support by virtue of their own social security benefits of $745.20 apiece. Respondent's determination is presumptively correct; we must hold that the petitioners are not entitled to the exemptions in issue. Decision will be entered under Rule 50. Footnotes
1. During the fall of 1966 the tractor was used to clear a piece of their land of underbrush and to plow it in order that it would be ready for planting in the spring of 1967.↩
2. It is possible that a portion of this amount is allocable to the property near Franklinville, North Carolina, where petitioners lived during the last few months of 1966.↩
3. Since Charlotte was not born until February 8, 1966, she lived with petitioners for only 327 days during the taxable year 1966.↩
4. All statutory references are to the Internal Revenue Code of 1954.↩
5. Sec. 1.152-1 General definition of a dependent. * * * (a)(2)(ii) In computing the amount which is contributed for the support of an individual, there must be included any amount which is contributed by such individual for his own support, including income which is ordinarily excludable from gross income, such as benefits received under the Social Security Act (42 U.S.C. ch. 7). * * *↩
6. In making this determination, the interest charges on that portion of the borrowed funds which was used for support purposes would not be excluded. However, the record is devoid of any evidence that would permit a proper allocation.↩
7. Rev. Rul. 235, C.B. 1953-2, 23; Rev. Rul. 64-222, C.B. 1964-2, 47↩.