JOHNNY T. MOODY and KATHLEEN MOODY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Moody v. Commissioner
Docket Nos. 26660-88, 14830-89
United States Tax Court
T.C. Memo 1991-596; 1991 Tax Ct. Memo LEXIS 646; 62 T.C.M. (CCH) 1357; T.C.M. (RIA) 91596; December 2, 1991, Filed *646 Decision will be entered under Rule 155. Johnny T. Moody, pro se. J. Craig Young, for the respondent. GALLOWAY, Special Trial Judge. GALLOWAY
MEMORANDUM OPINION These consolidated cases were heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1954 and Rules 180, 181, and 182. [1]
By notices of deficiency dated July 11, 1988 (for the year 1984) and March 24, 1989 (for the years 1985-1987), respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Additions to Tax, Sections
6651
6653
6653 6653
6653 Year
Deficiency
(a)(1)
(a)(1)
(a)(1)(A)
(a)(2)
(a)(1)(B)
1984
$ 2,281
-0-  $ 114.05
-    * -
1985
4,312
$ 319.17
215.60
-    **
-
1986
4,758
310.05
-   $ 237.90
- **
1987
4,061
-0-  -   203.05
- **
*647 After concessions by the parties, the issues for decision are: (1) Whether respondent's determination as to the year 1984 is barred by the statute of limitations; (2) whether petitioners' commercial fishing activity during the years in issue constitutes an "activity not engaged in for profit" within the meaning of section 183(a); (3) whether petitioners are entitled to an investment tax credit attributable to their fishing activity for the taxable year 1984; (4) whether petitioners are entitled to credits against the tax for gasoline and special fuels under section 34(a)(2) for the years 1984, 1985, and 1986, with respect to fuel purchased in connection with petitioners' commercial fishing activity; (5) whether petitioners are entitled to Schedule A itemized deductions in excess of the amounts allowed by respondent for the years 1984-1987; (6) whether petitioners' political contribution credits for the *648 years 1984-1986 are allowable; (7) whether petitioners are entitled to dependency exemptions claimed for their grandchildren in the years 1985-1987; (8) whether a child care credit for the year 1985 is allowable; (9) whether petitioners are liable for the above additions to tax. Some of the facts have been stipulated by the parties and are so found. The stipulation of facts and related exhibits are incorporated herein by this reference. Petitioners resided in Decatur, Alabama, at the time they filed their petition in this case. Procedural Background
The case for the 1984 year was originally scheduled for trial on April 20, 1989. Petitioner Johnny T. Moody and respondent appeared on April 20, 1989, at the calendar call of the case for trial. Mr. Moody orally moved to continue the case, which motion was opposed by respondent. Mr. Moody's motion was based on the ground that his tax preparer/accountant, Johnny Letson (Mr. Letson), refused to give petitioners their records because Mr. Letson was under criminal investigation by the Internal Revenue Service. The parties established at this hearing that: (1) Mr. Letson was petitioners' accountant/tax preparer and son-in-law; *649 (2) Mr. Letson was under criminal investigation by the Internal Revenue Service, which investigation did not involve petitioners; (3) Mr. Moody has a 4th grade education; (4) petitioners' tax returns and the petition were prepared by Mr. Letson; (5) the primary issue in dispute for 1984 was whether Mr. Moody's commercial fishing business was not engaged in for profit; and (6) petitioners had recently filed a petition for later years involving the same principal issue before the Court in 1984. Petitioners' motion to continue was granted. Mr. Moody was advised that he and his wife had the responsibility for substantiating the deductions in dispute irrespective of Mr. Letson's alleged refusal to make petitioners' records available. (1) Statute of Limitations - 1984
The time for filing petitioners' 1984 tax return was extended from April 15, 1985, to August 15, 1985, due to respondent's approval of petitioners' request for an automatic extension of time. The date typed on the filed 1984 return was June 1, 1985. Petitioners claim that the return was mailed to respondent on that date. Since the 90-day letter was issued on July 11, 1988, petitioners argue that the notice of deficiency *650 was untimely and barred by the statute of limitations. The burden of proof as to the running of the statute of limitations is on the taxpayer. United States v. Gurley, 415 F.2d 144, 147 (5th Cir. 1969); Espinoza v. Commissioner, 78 T.C. 412, 421 (1982); Estate of Price v. Commissioner, T.C. Memo 1984-613. Section 6501(a) provides (with certain exceptions inapplicable here) that the amount of any income tax must be assessed within three years after the taxpayer files his tax return. Where a tax return is filed before the due date prescribed by law, it is considered to have been filed on its due date. Sec. 6501(b)(1); Radding v. Commissioner, T.C. Memo 1988-250. Where an extension of time for filing the return is granted, a tax return that is filed prior to the extended due date is considered filed as of the date it is actually received by respondent. Pace Oil Co. v. Commissioner, 73 T.C. 249, 255 (1979); Briggs v. Commissioner, T.C. Memo 1988-130. In this case, although petitioners claim that the 1984 return was mailed by certified mail on June 1, 1985, *651 it was stamped received by the Atlanta Service Center on August 2, 1985. Petitioners have not furnished a certified mail receipt or other evidence verifying the mailing of a document to the Service Center on the date it was claimed to have been mailed. Since petitioners have produced no evidence that the 1984 return was mailed to the Service Center on or about June 1, 1985, we conclude that it was mailed several days prior to its receipt by the Service Center on August 2, 1985. The notice of deficiency mailed to petitioner on July 11, 1988, as evidenced by respondent's copy of Postal Form 3877, was therefore timely. Accordingly, respondent's determination as to the year 1984 is not barred by the statute of limitations. (2) Commercial Fishing Activity - Section 183
Respondent determined that petitioner's commercial fishing activity was not engaged in for profit within the meaning of section 183(a) during the years in issue. Respondent also contends that many of the fishing activity expenses have not been substantiated. Deductions are strictly a matter of legislative grace. Petitioners have the burden of establishing that they are entitled to all deductions claimed on their *652 Federal income tax returns. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 78 L. Ed. 1348, 54 S. Ct. 788 (1934); Welch v. Helvering, 290 U.S. 111, 115, 78 L. Ed. 212, 54 S. Ct. 8 (1933). Section 183(a) generally provides that if an individual engages in an activity, and "if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided by this section." For the fishing activity expenses at issue to be allowed as deductions in excess of income reported, petitioner must establish that the activity was engaged in for profit. Whether an activity is engaged in for profit turns on whether petitioner carried on his activity with an "actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Ronnen v. Commissioner, 90 T.C. 74, 91 (1988). The regulations list nine factors as an aid in making the profit objective determination under section 183. No one of the nine factors is controlling; rather it is an evaluation of all the facts and circumstances of the *653 case in issue which is determinative. Sec. 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner, 86 T.C. 360, 371 (1986). Johnny T. Moody (petitioner) was 54 years of age at the time of trial. Petitioner and his wife worked full-time during all years in issue. Petitioner was a bulldozer operator/foreman for Decatur Utilities and Mrs. Moody was a nurse's aide at a local nursing home. Petitioner learned about commercial fishing by helping his father when he was about 11 years of age. Mr. and Mrs. Moody received the following gross income during the years 1984 through 1987 from sources other than the fishing activity: Source
1984 1985 1986 1987 Wages
$ 29,855.54
$ 30,535.34
$ 33,690.54
$ 35,431.79
Interest
14.69
13.61
14.69
21.00
State/Local
Tax Refund
350.73
814.08
- 0 -
- 0 -
Petitioner testified that in the late 1970s he decided to commence a commercial river fishing business. This activity was carried on mostly on weekends since petitioner and his wife worked at full-time jobs. The record does not disclose the amounts of profits/losses in the early years. For the taxable years 1982 through 1987, petitioner reported losses *654 from his commercial fishing activity on Form 1040, Schedule C, as follows: Gross Operating
Year
Receipts
Expenses Depreciation
Net Loss
1982
$ 320 7,028
$ 1,490
($ 8,198)
1983
1,251
12,163
1,483
( 12,395)
1984
1,011
16,043
1,543
( 16,575)
1985
4,797
17,515
14,417)
1986
4,500
22,392
1,687
( 19,579)
1987
5,506
19,768
1,355
( 15,617)
Totals
$ 17,385
$ 94,909
$ 9,257
($ 86,781)
Petitioner initially engaged in the "jump-box" method of commercial fishing. According to petitioner, this method of fishing sometimes caused problems in that "hooks * * * wrapped around my lines", resulting in a reduction of the number of fish petitioner was able to catch and sell. Petitioner's equipment used for fishing included his motorboat, a trailer, jump boxes with liner nets, and ice coolers to carry the fish home. Some time in 1984, petitioner became acquainted with Leldon Chunn, described by petitioner as "the old river rat", who lived on the banks of the Tennessee River, and had been engaged in full-time commercial river fishing for many years. Mr. Chunn advised petitioner how to use his fishing equipment more efficiently by resorting to the "swivel *655 tug-in" method of fishing. After changing his method of river fishing, petitioner's gross receipts from sales of fish increased substantially for the years 1985-1987. Petitioner primarily sold fish to individuals. Although petitioner's gross receipts increased after he changed his method of fishing, his expenses also increased, especially in 1986. In that year, petitioner was required to move his fishing activity from the Decatur area to the Guntersville/Jackson Lake area, 79 miles from his home, which was "above the dam." The change was necessary because a danger of fish contamination caused fish sales in the Decatur area to decrease. Petitioner's claimed travel and lodging expenses from his weekend fishing increased from $ 5,239 and $ 5,104 in 1984 and 1985 to $ 9,485 and $ 6,138 in 1986 and 1987. We find it unnecessary to conduct an analysis of all the nine factors detailed in section 1.183-2(b), Income Tax Regs., to conclude that petitioner lacked an actual and honest objective of making a profit from his commercial river fishing activity in the years in issue. Although petitioner claims that Mr. Letson maintained complete books and records disclosing the income and expenses *656 of petitioner's fishing activity, respondent asserts that many of the deductions claimed on the Schedules C are mere estimates. These records were made available to respondent after petitioner's first hearing before the Court. Although none of the records were produced for the Court's consideration, the parties stipulated that certain interest, taxes, and accounting fee deductions, disallowed as fishing activity expenses, were allowable as Schedule A deductions. The record discloses that petitioner did seek expert advice. After fishing for several years, petitioner did contact Mr. Chunn, an expert in commercial river fishing. Petitioner increased his sales of fish after Mr. Chunn advised petitioner to change his method of fishing. However, Mr. Chunn's long-time success as a commercial fisherman and his expert advice to petitioner do not establish that petitioner's fishing activity could become profitable. Petitioner impressed us as an intelligent, credible, and truthful witness. Petitioner testified that long before he met Mr. Chunn, he was concerned because expenses of his commercial fishing activity greatly exceeded his income. Petitioner stated that to finance the large *657 fishing activity expenses claimed, he remortgaged his home and also frequently borrowed heavily from private individuals. Petitioner's claimed fishing activity interest expenses for the years 1984, 1985, 1986 and 1987, totaled $ 5,420, $ 3,881, $ 3,423, and $ 6,956, respectively. Petitioner admitted that after frequently reviewing the claimed interest expenses and fishing travel expenses on his returns, he "was going downhill, instead of gaining anything" and "was defeating myself." Some time in 1987, petitioner talked to Mr. Letson about why he was losing so much money and decided to terminate his fishing activity after that year. Petitioner was unable to explain to the Court how his fishing activity could ever become profitable for the years in issue. He admitted that "if I could have sold all the fish I caught, then I could have made some money." Unfortunately, due to insufficient sales outlets, petitioner admitted that frequently he had to throw away as many as three-fourths of the fish he caught. We conclude that petitioner has failed to meet his burden of proving he operated his commercial river fishing activity with the requisite profit objective. Respondent is sustained *658 on this issue. (3) Investment Tax Credit - 1984
Petitioner claimed an investment credit of $ 72 attributable to his fishing activity for 1984. To be allowed an investment credit, a taxpayer must show that his property is used in a trade or business or held for the production of income. Secs. 38; 48(a)(1); 167(a). Our determination that petitioner's commercial fishing activity was not engaged in with the objective of making a profit precludes petitioner from claiming an investment credit on property related to the fishing activity. See Pike v. Commissioner, 78 T.C. 822, 841-842 (1982), affd. in an unpublished opinion 732 F.2d 164 (9th Cir. 1984); Finoli v. Commissioner, 86 T.C. 697, 744-745 (1986). Respondent is sustained on this issue. (4) Fuel Tax Credits - 1984, 1985, 1986
Petitioner claimed fuel tax credits of $ 36.27, $ 65.34, and $ 108.09, respectively, for the taxable years 1984, 1985, and 1986, for gasoline allegedly purchased for the motorboat used in petitioner's fishing activity. Section 34(a)(2) provides for a tax credit equal to the sum of the amounts payable under section 6421 with respect to gasoline *659 used during the taxable year "otherwise than as a fuel in a highway vehicle." However, the tax credit for off-highway use is not available unless the gasoline is used in a business use. Sec. 6421(a). Furthermore, the term "off-highway business use" does not apply to use in a motorboat unless the vessel is employed in the fisheries or in the whaling business. Sec. 6421(e)(2)(B). In this case, petitioner is precluded from claiming the fuel tax credit for the years in issue since his motorboat was not engaged in the fisheries business. Respondent's disallowance of the claimed fuel tax credits is sustained. (5) Schedule A Itemized Deductions - 1984-1987 (6) Political Contribution Credits - 1984, 1985, 1986
In their filed stipulation of facts, the parties agreed as to the correct amount of all 1984 Schedule A itemized deductions and most of the itemized deductions for 1985, 1986, and 1987. As to the itemized deductions remaining in dispute, petitioner has the burden of proving the amount of these deductions which exceed the amounts conceded by respondent. Petitioner also has the burden of establishing his entitlement to political contribution credits in the amount of $ 100 *660 claimed for each of the taxable years 1984, 1985, and 1986, under section 24(a), which were disallowed for lack of substantiation. Petitioner has failed to present any evidence that he is entitled to itemized deductions in excess of those conceded by respondent or political contribution credits in the amounts claimed. Accordingly, we sustain respondent's determination of these issues. (7) Dependency Exemptions
Petitioner claimed dependency exemptions [2] for his grandchildren: Donny Letson, Jonny Letson, Nicole Letson, Waylon Letson, and Kimberly Hammack, in 1985, 1986, and 1987. In 1986 and 1987, petitioner claimed dependency exemptions for Heather Letson and Tena Whisenant. Respondent disallowed all of these exemptions for the years in issue. The grandchildren surnamed Letson are the children of petitioner's daughter Barbara and John Letson. These grandchildren lived in the Letson household during the years in issue. Kimberly Hammack is the daughter of Barbara Letson from a prior marriage and also lived with Barbara and John Letson during the years 1985-1987. Tena Whisenant is the daughter of petitioner's daughter Belinda, a single mother. Tena and her mother lived *661 in a trailer home near petitioner's residence during the 1985-1987 years. According to petitioner, he made the downpayment on Belinda's trailer home since Belinda was working but not making enough to support herself. Petitioner testified that he felt he provided over half the support of Tena during the years in issue, although he admitted, during trial, that he did not provide over one-half the support of the Letson grandchildren, and granddaughter Kimberly during these years. Section 151(c)(1)(A) allows a taxpayer to claim an exemption for each dependent (as defined in section 152) whose gross income is less than the exemption amount. Section 152(a)(1) defines the term "dependent" to include a grandchild of a taxpayer who receives over one-half of his or her support from the taxpayer during the taxable year. Petitioner bears the burden of proving that he provided over one-half *662 of each grandchild's support during each year for which the exemption is claimed. See Seraydar v. Commissioner, 50 T.C. 756, 760 (1968); Blackshear v. Commissioner, T.C. Memo 1977-231. As part of this burden, petitioner must establish by credible evidence the total amount of the claimed dependent's support from all sources during the taxable year. Stafford v. Commissioner, 46 T.C. 515, 518 (1966). Petitioner has failed to produce documentary evidence to establish the amounts of support he and his wife, and the grandchildren's parents (or any other individuals) provided the grandchildren during each taxable year. Mr. Letson testified that he did not claim the Letson children and Kimberly as exemptions on his own tax returns since he did not provide over half the support of those children during the years 1985-1987. However, Mr. Letson admitted furnishing the children shelter and support for those years. According to Mr. Letson, he has lost most of his clients and has had little income as a result of his problems with the Internal Revenue Service for the past five years. Other sources of support for the Letson children *663 in 1985-1987 included welfare payments and some food stamps. Mrs. Letson did not work. Mr. Letson claimed that petitioner provided most of the food for his family during the years in issue and asserts that petitioner should be able to claim the children as dependency exemptions under a multiple support arrangement since together petitioner and Mr. Letson contributed over one-half of the support of petitioner's grandchildren living in the Letson household. Section 152(c) provides guidelines for the claiming of dependency exemptions where multiple taxpayers support a dependent. Section 152(c)(4) requires a written declaration for each person (other than the taxpayer) who contributed over 10 percent of such support that he will not claim the individual as a dependent for the same taxable year. Section 1.152-3(c), Income Tax Regs., provides that the written declaration may be made on Form 2120 or in a similar manner. With respect to petitioner's claim of dependency exemptions for his grandchildren living in the Letson home, petitioner has not produced the required declarations or furnished information concerning whether any other party would be required to also file a Form 2120. *664 Nor has petitioner furnished evidence of support furnished each claimed dependent from all sources during the years in issue. Stafford v. Commissioner, supra at 518. Accordingly, respondent's disallowance of the dependency exemptions claimed for the grandchildren living in the Letson home is sustained. See Sherman v. Commissioner, T.C. Memo 1989-269. With respect to granddaughter Tena Whisenant, respondent alleged that petitioner recently furnished him with a form in which Tena's mother Belinda purportedly "allowed" petitioner the dependency exemption for the years in issue, pursuant to a "multiple support statement." Apparently, the statement alleged that Belinda, her ex-husband Barry, and petitioner, each provided over 10 percent of Tena's support during the years in issue, and that Barry was not claiming Tena as a dependency exemption. No Form 2120 or other required declaration was submitted or signed by Belinda or Barry. Petitioner has failed to prove his entitlement to a dependency exemption for Tena under the provisions of section 152(c)(4). Respondent's disallowance of the dependency exemptions claimed for Tena in 1986 and *665 1987 is sustained. While we recognize that this result may seem harsh when no person may be able to claim dependency exemptions for children supported by several individuals, petitioner simply has not produced the Form 2120 declarations required under the law. Furthermore, we have no equity powers to afford petitioner relief under these circumstances. See De La Garza v. Commissioner, 46 T.C. 446, 449-450 (1966), affd. per curiam 378 F.2d 32 (5th Cir. 1967). (8) Child Care Credit
Petitioner claimed a $ 290 child care credit for the taxable year 1985 based on $ 1,115 allegedly paid for the care of three unidentified qualifying individuals. Respondent disallowed this credit because of lack of substantiation. The burden of proof on this issue is on petitioner. See Gettings v. Commissioner, T.C. Memo 1988-328. Section 21 allows a tax credit for a percentage of the employment-related expenses incurred by a taxpayer who maintains a household which includes one or more qualifying individuals, if such expenses are incurred to enable the taxpayer to be gainfully employed, and such expenses are for the care of the qualifying *666 individual. The term "qualifying individual" includes "a dependent of the taxpayer who is under the age of 15 [now 13] and with respect to whom the taxpayer is entitled to a deduction under section 151(c)." Sec. 21(b)(1)(A). Petitioner claimed dependency exemptions in 1985 for five of his grandchildren, and child care credits were claimed for three of these grandchildren. However, none of the grandchildren were members of petitioner's household during the years in issue, nor is petitioner entitled to claim the grandchildren as dependency exemptions. Accordingly, respondent's disallowance of the child care credit is sustained. (9) Additions To Tax (a) Failure to File A Timely Return
Respondent has determined additions to tax under section 6651(a)(1) for the taxable years 1985 and 1986 because of petitioner's failure to timely file 1985 and 1986 joint Federal income tax returns. These returns were prepared by Mr. Letson, dated April 6, 1988, and received by the Service Center on April 12, 1988. Petitioner must establish that his failure to timely file the returns "is due to reasonable cause and not due to willful neglect." Sec. 6651(a)(1). Petitioner admitted that the *667 returns were filed late but stated that he knew nothing about tax returns and relied entirely on Mr. Letson to timely prepare the returns for filing. Mr. Letson testified that petitioner brought his records to Mr. Letson in sufficient time to prepare the returns for timely filing. Mr. Letson alleged that "the IRS had me scared, and I was afraid to file the tax returns." The failure to timely file a tax return is not excused by the taxpayer's reliance on an agent. Such reliance is not "reasonable cause" for a late filing under section 6651(a)(1). United States v. Boyle, 469 U.S. 241, 252, 83 L. Ed. 2d 622, 105 S. Ct. 687 (1985). Since petitioner has not shown reasonable cause for failure to timely file the 1985 and 1986 returns, respondent's determination of the additions to tax under section 6651(a)(1) is sustained. (b) Negligence
Respondent has determined additions to tax under section 6653(a)(1) and (2) (for 1984 and 1985) and 6653(a)(1)(A) and (B) (for 1986 and 1987) on the grounds that the underpayments in petitioner's income taxes for all four years are due to negligence or intentional disregard of rules or regulations. Respondent's determination is presumptively correct and the *668 burden is upon petitioner to show that the additions to tax for negligence are erroneous. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Respondent argues that petitioner maintained no formal books and records for the commercial fishing activity, and kept no records of any kind for that activity except for a few cancelled checks and receipts. Respondent also argues that petitioner deceived the government when he filed returns disclosing that as many as seven children lived with him when in fact they did not, and for identifying the claimed dependents on his tax returns as his children rather than grandchildren. We have found that petitioner understood little about tax returns and that he relied on, and completely trusted Mr. Letson to correctly prepare his tax returns. However, petitioner was aware that deductions must be substantiated by records. He also generally understood the requirements for claiming dependency exemptions. Petitioner, an intelligent person despite his lack of formal education beyond the 4th grade, showed lack of due care or failure to do what a reasonable person should do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). *669 Petitioner failed to question Mr. Letson concerning the propriety of all deductions resulting in large fishing losses claimed, and why many grandchildren for whom he did not provide over one-half the support were claimed as dependency exemptions on his returns. Moreover, petitioner failed to question Mr. Letson why his 1985 and 1986 returns were filed late after petitioner had furnished Mr. Letson the information to prepare timely returns. Petitioner has failed to sustain his burden of proving that the additions to tax for negligence were erroneously determined. Accordingly, respondent is sustained on this issue. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
*. 50 percent of the interest due on $ 2,317.27.↩
**. 50 percent of the interest due on the entire underpayment.↩
2. During trial, respondent conceded that petitioner was entitled to dependency exemptions claimed for his son Thomas in 1985 and 1986.↩